# APRIL TERM, 1866.

## CHARLES K. MARSHALL *v.* WM. GRIMES.

1. STATUTES : CONSTRUCTION OF.—General words in a statute are not to be so construed as to give it an effect beyond the legislative power, and thereby render the statute unconstitutional.

2. FRANCHISE : FERRY LICENSE ACROSS THE MISS. RIVER : POWER OF THE STATE TO GRANT.—The act of Congress for the admission of the State of Mississippi into the Union, which declares "that the Mississippi river shall be a common highway, and forever free to the citizens of the United States, without any tax, duty, impost, or toll therefor imposed by this State," does not interfere with the police power of the State to grant ferry licenses across the river. *Fanning* v. *Gregoine*, 16 How. 534. ·

3. SAME : POWER TO ESTABLISH AND REGULATE FERRIES BELONGS TO THE STATES AND NOT TO CONGRESS.—The power to establish and regulate ferries belongs to the States, and is not included in that grant of power to the Federal Government "to regulate commerce with foreign nations and among the several States, and with the Indian tribes." *Conway* v. *Taylor*, 1 Black, 604.

APPEAL from the chancery Court of Warren county. Hon. Jacob S. Yerger, chancellor.

*Marshall* and *Miller*, for appellants, cited

*Gibbons* v. *Ogden*, 9 Wheat.; *Fanning* v. *Gregoine*, 16 How. 534; *Steamboat Co.* v. *Livingston*, 3 Cowan, 734; *Conway* v. *Taylor*, 1 Black.

*W. Brooke, W.* and *G. R. Yerger* for appellees.

*Gibbons v. Ogden*, 9 Wheat.; Passenger cases, 17 Curtis, 122; 22 Howard, 227.

HANDY, C. J., delivered ·the opinion of the court.

·This was a bill filed by the appellant in the Chancery Court of Warren county, alleging that, by an act of the legislature

of this State, passed November 29, 1865, the exclusive right of running a ferry-boat across the Mississippi river, within certain limits therein prescribed, was granted to him ; that he had, at great expense, purchased a large steam ferry-boat, and brought it to the ferry landing at Vicksburg, and was fully prepared to comply with all the terms and stipulations of said act of the legislature ; that William Grimes and others, in violation of the right granted by that act, placed a ferry-boat, to run within the limits granted to the complainant by the act, and persist in running their ferry-boat, in violation of the right granted to the complainant ; and praying for an injunction to restrain the defendants from running their boat in violation of the complainant's right. The act of the legislature is exhibited with the bill.

The first section authorizes the complainant, his heirs and assigns, to establish and keep a ferry across the Mississippi river for the accommodation of persons and movable property for transportation to a point on the Louisiana shore opposite to the city of Vicksburg, not provided for in the charter of the Vicksburg, Shrevesport, and Texas Railroad Company, granted 29th February, 1856, and said right shall cover the banks of said river for a distance up and down the river of four miles in each direction, with the exclusive right to said parties to collect fees and charges for ferriage, for twenty years, but not to invalidate the rights of said railroad company. Section 2d provides that the fees for transportation fixed by the board of police of Warren county, shall regulate the charges, and that the board may require the customary bond, and payment into the county treasury of the amount already established by them, payable annually during the existence of the charter, as a bonus to the county ; that after the expiration or extension of the charter granted by the board of police of Warren county, to said Marshall, said board shall have authority to require as a bonus a sum not exceeding three hundred dollars annually, to be paid into the county treasury by the parties owning and running the ferry. Other sections prohibit the interference with the rights granted, except by the railroad

company, require the parties to comply with the general laws regulating ferries in this State, and reserve the right to repeal, alter, or amend the act.

The answer admits the passage of the act of the legislature, but denies that it is of any validity, because it is contrary to the constitution of this State, 1st, in attempting to confer exclusive emoluments and privileges, not in consideration of any public service; 2d, because the legislature had no jurisdiction over the subject of ferries, the same being committed by the constitution to the board of police. It admits that at the time of filing the bill, defendant had a ferry-boat to carry on a ferry within the limits granted to complainant by the act of the legislature; that at the date of filing the bill, he was engaged in running a steamboat from a point on the banks of the Mississippi river, within the limits of the city of Vicksburg, to a point or points on the other side of the river, in Louisiana, for carrying freight, passengers, etc., he being the sole owner of said boat by purchase, on 27th November, 1865, from John A. Kline, who had obtained authority from the military authorities then occupying the city of Vicksburg, in March, 1864, to carry on a ferry at that point, there being no ferry authorized by law at that point; and he continued to do so until 27th November, 1865, when said Kline sold said boat to defendant; that Kline had procured from the city authorities of Vicksburg, the privilege of landing said boat at the wharf belonging to said city, said city being the owner in fee of the river front, which said privilege Kline transferred to defendant with the boat; alleges, that by the law of this State, the city of Vicksburg has the right, with the consent of the board of police, to establish a ferry to run from any portion of the landing belonging to the city, which right cannot be taken away from the city, unless on due notice she declines or refuses to do so; and defendant insists that, for this reason, complainant has no right to deprive the city or any one acting under its authority, from the rights granted by the city, except in compliance with the general law; and that no notice was given to said city or to the defendant, of the action of complainant in procuring the passage of the act in his

behalf; that on the 29th November, 1865, he caused the steamboat owned by him as a ferry-boat to be regularly enrolled in the office of the Collector of Customs at Vicksburg, in accordance with the acts of Congress, and he exhibits a copy of the enrollment; and that by virtue thereof he was entitled to a license from said Collector to carry on the coasting trade from said port, to and with the State of Louisiana, which license he procured and exhibits; and that it was in accordance with that license that he was running his boat when he was enjoined in this suit; and that he is entitled thereby to run his boat and carry on trade, and take passengers and freight to any point in Louisiana, and that such intercourse is a coasting trade and commerce between the States, within the meaning of the constitution and laws of the United States; that the Mississippi river is a navigable stream, and that under the constitution and laws of the United States, and his license, he has the right of commercial intercourse, and to carry on the coasting trade, with the State of Louisiana, whether his boat is called a ferryboat or a packet; and he insists that the legislature of this State had no power to infringe his rights; and that the act passed for the complainant's benefit is unconstitutional.

On the filing of this answer, the defendant moved the court to dissolve the injunction; which motion was sustained, and from that decree this appeal was taken.

The questions presented in the argument of the case are:—

1. Whether the act of the Legislature granting the ferry franchise to the appellant, is in violation of the act of Congress for the admission of this State into the Union, which declares that the Mississippi river shall be a common highway, and forever free to the citizens of the United States, without any tax, duty, impost, or toll therefor imposed by this State.

2. Whether the franchise granted to the appellant is an assumption of the power granted to Congress by the constitution of the United States, " to regulate commerce with foreign nations, and among the several States, and with the Indian tribes," and is therefore unconstitutional.

1. The ground on which the act in question is alleged to be

objectionable, under the first point, appears to be, that the third section prohibits all persons, except the railroad company, from "transporting any person, animal, or property across the river, within the specified limits;" and it is urged that this prohibits, under severe penalties, any citizen from taking his own property in his own vessel across the river, within the limits of the franchise, and compels such person to use the boat of the appellant for that purpose, and to pay toll for it.

If this were the effect of the act, the objection to it would be clearly well founded. But we do not consider the view as sustained by a proper construction of the act. Its object manifestly was, to give to the appellant the exclusive right of keeping a public ferry across the river, and to receive the tolls for transportation. The language of the third section is, that "no person, except the railroad, shall be permitted to *transport* any person, animal, or property," etc. And this language must be taken with reference to the object the legislature had in view, which was, to secure to the appellant the exclusive right of keeping a ferry for transportation, and to prohibit all persons from interfering with that right, *by keeping a ferry*, or *engaging in the business* of transporting persons, animals, or goods. It was not within the power of the legislature to deprive an individual of the right to take himself or his personal property in his own vessel, or in that of another, whether used for public or private business; provided such boat was not kept and used for the purpose of a ferry-boat. And general words in the act should not be so construed as to give an effect to it beyond the legislative power, and thereby render the act unconstitutional. But, if possible, a construction should be given to it that will render it free from constitutional objection, and the presumption must be that the legislature intended to grant such rights as were legitimately within its power.

But, if the view of the act taken in behalf of the appellee were correct, it would be of no avail to him in this case. It would only show that the act is unconstitutional, so far as it prohibited private individuals from taking themselves or their property across the river, in their own boats or in the boats of

others, not used as ferry-boats. But that would not render it unconstitutional, on the ground under consideration, *as to persons keeping and using a ferry-boat* in violation of the franchise granted to the appellant; and that is the case presented between these parties.

The grant to the appellant does not interfere with any right intended to be guaranteed to the citizen by the act of Congress referred to. In securing that right, it never could have been intended to interfere with any of the rights and established usages of the States, whose territory lay contiguous to the river, or as impairing the rights of individuals granted by the States in furtherance of the great objects of trade and intercourse between the States. The object of the guaranty was, that no obstruction should ever be made to navigation on the river, and that it should be free to all the citizens of the United States, and not to those on its borders only, as a great navigable stream, for the ordinary purposes of navigation and trade. But it was never intended to interfere with the right of travel and intercommunication between the States bordering on it, nor with the customary facilities necessary to that end. When the act was passed, there must have been ferries at numerous points on the whole length of the river, which were highly useful, if not absolutely necessary, as the media of commerce and intercourse between the States; and it is manifest that means so necessary to the public convenience were never intended to be affected by the act of Congress, and that the right guaranteed by the act was to be in subordination to the public good and the great right of travel and inter-communication so carefully secured in the constitution. Accordingly, it has been held by the Supreme Court of the United States, that neither the guaranty of the free navigation of the Mississippi river, nor any right supposed to arise from the exercise of the commercial power of Congress, interferes with the police power of the States in granting ferry licenses. *Fanning* v. *Gregoine*, 16 How. 534.

2. We proceed to consider the second question, whether the grant to the appellant is an interference with "the power to

regulate commerce among the States," delegated to Congress by the constitution.

The act of the legislature grants the exclusive privilege of keeping and maintaining a ferry, across the Mississippi river, for the accommodation of such persons and movable property as may be for transportation, to a point on the Louisiana shore opposite the city of Vicksburg; which right is to cover the banks of the river for a distance on each side of that city, up and down the river, of four miles; and prohibits any other person from keeping a ferry within the specified limits.

It is to be observed, that the space of four miles on each side of the city of Vicksburg, up and down the river, is merely the limit of the franchise granted to the appellant, within which all other ferries are prohibited. The grant of the franchise, of course, cannot operate to deprive the riparian proprietors, in that space, of their property in the soil; and the privilege granted can only be exercised by the appellant's using his own soil, within that space, for the landing of his boat, or the lands of such other persons as may consent to their use by him. Nor can the franchise be so used as to impair the rights which the appellee has, under his license from the United States, to navigate the Mississippi river; to land his boat at any point on the river, not in violation of the regulations of the city or town, or of the rights of the riparian proprietor, where the landing may take place; or to carry persons or property to any place authorized by his license; and to enjoy fully his right to carry on the coasting trade under his license; provided he does not use his boat as a ferry-boat within the limits of the appellant's franchise.

As to the extent of the territory covered by the grant, the propriety of that is a matter depending on the circumstances of the case; and as no evidence of wrong or oppression by reason of that is here shown, it must be presumed that the legislature made the grant to the extent it did for good and sufficient reasons.

Is this grant, then, a usurpation of the power belonging to Congress to regulate commerce among the States?

It is true that ferries, whether confined to the limits of a single State, or extending across rivers from one State to another, may be very materially connected with commerce between the States, as the modes of conveyance by which trade and intercourse are carried on between them. But it by no means follows that they are embraced in the power delegated to Congress to regulate commerce among the States, and that they are subject to the regulation of the Federal Government. They are, from their nature, matters of internal police of the State, essential to her domestic interests, and must necessarily be under the power of the State. The ends of public convenience intended to be subserved by such franchises, cannot be attained without regulations of law for the faithful and efficient performance of the duties required; and inasmuch as the propriety of such regulations depends greatly on local circumstances governing each case, the State legislature, or tribunals authorized by it, are manifestly the proper depository of that power. Hence it is well settled, that the power to establish and regulate ferries has not been delegated by the States to the Federal Government, and consequently that it legitimately belongs to the States.

In *Gibbons* v. *Ogden*, 9 Wheat. 1–203, Chief-Justice Marshall, delivering the opinion of the Supreme Court of the United States, says: "They"—speaking of the State inspection laws and of a large class of local powers in the States—"form a part of that immense mass of legislation which embraces every thing within the territory of a State not surrendered to the Federal Government—all of which can be most advantageously exercised by the States themselves. Inspection laws, quarantine laws, health laws of every description, as well as laws for regulating the internal commerce of a State, and those which respect turnpike roads, ferries, etc., are component parts of this mass. No direct general power over these objects is granted to Congress; and consequently they remain subject to State legislation."

It is insisted, by counsel for the appellee, that this statement is *obiter* and not of authority. But, without going into a minute

examination of the case to show that this is founded in error, it is sufficient to say, that the same principle has been frequently affirmed by the same court in subsequent cases, and that the decision is held as authoritative on the point, by several of the most enlightened of the State courts.

In *Fanning* v. *Gregoine*, above cited, the same court says : " The argument that the free navigation of the Mississippi river, guaranteed by the ordinance of 1787 (which is the same in substance as the act of Congress in relation to this State), or any right which may be supposed to arise from the exercise of the commercial power of Congress, does not apply in this case. Neither of these interferes with the police power of the States in granting ferry licenses."

In *Cooley* v. *Board of Wardens of Philadelphia*, 12 How. 320, the same court says : " The mere grant to Congress of· the power to regulate commerce, did not deprive the States of the power to regulate pilots." And that power is entirely analogous to that in relation to ferries, so far as each case may be affected by the provisions of the constitution of the United States.

In the case of *City of New York* v. *Miln*, 2 Peters, 141, the same court distinctly recognizes the principle stated by Ch.-J. Marshall, and in the very lucid opinion of the court, the doctrine upon this subject is thus stated : " That all those powers which relate to merely municipal legislation, or what may, perhaps, more properly be called *internal police*, are not thus surrendered or restrained ; and that, consequently, in relation to these, the authority of a State is complete, unqualified, and exclusive."

The case of *Conway et al.* v. *Taylor's Exrs.* 1 Black, Sup. Court U. S. 603, bears all the leading features of this case, and is decisive of it.

James Taylor, the riparian proprietor of the ground fronting on the Ohio river at the city of Newport, obtained from the proper court in Kentucky, a license to keep and run a ferry from that town across the Ohio river. After he had been in the use and enjoyment of that franchise for many years, Conway and others formed a company, built a steamer to run as a

ferry-boat to and from Cincinnati and Newport, and rented a part of the river front of the city of Newport from the corporate authorities, and had the boat enrolled in the custom-house of the United States, obtained a license to run her in the coasting trade, and commenced running her as a ferry-boat between the points stated.    Taylor filed his bill in equity, enjoining the running of the boat as a ferry-boat, and the case was finally decided in the Court of Appeals of Kentucky, perpetually enjoining Conway & Co. from running their boat as a ferry-boat from Newport across the river, because it was an infringement of the franchise of Taylor.

In rendering the decision, the Court of Appeals of Kentucky elaborately examines the objection now under consideration—that the franchise of Taylor was in conflict with the power of Congress to regulate commerce among the States, and decides that the objection could not be sustained.

From that decree, an appeal was taken to the Supreme Court of the United States, and it was there affirmed.    The court, in delivering its opinion, quoted the extract above stated from the opinion of Chief-Justice Marshall in *Gibbons* v. *Ogden*, and adopted it with emphasis as applicable to ferries, saying that that proposition had not been questioned in any subsequent adjudication, but had been repeatedly affirmed both in that court and in the State courts.    The court also adopt the extract above quoted from *Fanning* v. *Gregoine;* and, after holding that there was nothing in the franchise granted, infringing the commercial powers of the United States, and nothing transcending the legitimate exercise of the legislative power of the State, concludes as follows :

" There has been now nearly three quarters of a century of practical interpretation of the constitution.    During all that time, as before the constitution had its birth, the States have exercised the power to establish and regulate ferries ; Congress never.    That the authority lies within the scope of that immense mass of undelegated powers which are reserved to the States respectively, we think too clear to admit of doubt. We place our judgment wholly on that ground."

If additional authority were required, it is to be found in many of the State courts.

The same principles are held in a well-considered and lucid opinion of the Court of Errors and Appeals of New Jersey in *The Chosen Freeholders* v. *The State*, 4 Zabrisk. 718 and by the Supreme Court of New York, in the *People* v. *Babcock*, 11 Wend. 586. In both of these cases, the courts consider the opinion of Ch. J. Marshall, as above quoted, decisive of the question, that the power over ferries was not embraced in the provision of the constitution of the United States here relied on, and that it is reserved to the States. And in the latter case, Nelson, J., uses the following forcible language:

" The constitutional power of Congress to regulate commerce with foreign nations, stands upon the same footing as that which may exist among the several States; and if the State has not reserved the right to establish and regulate ferries upon the waters in question within her limits, then she has not the right to establish and regulate ferries upon the waters separating her from other States; and the consequence would be, that no public ferries could exist in all these cases, unless under the authority of Congress. Such power has never been claimed by Congress; and, on the contrary, it has always been exercised by the several States between which a ferry is practicable and convenient."

These adjudications, with many more which might be cited, and especially that of *Conway* v. *Taylor*, appear to be conclusive of the question under consideration, and to sustain the constitutionality of the franchise of the appellant beyond doubt.

It follows from these views that the decree dissolving the injunction must be reversed, and the cause remanded for further proceedings.