HELENA-GLENDALE STEAM FERRY CO. *v.* STATE.

[57 South. 362.]

INTERSTATE COMMERCE. *Privilege tax.*

A state cannot impose a tax on the privilege of operating a ferry engaged exclusively in carrying passengers across a river from one state to another, as this would be a burden on interstate commerce.

APPEAL from the circuit court of Tunica county.

HON. SAM C. COOK, Judge.

The Helena Glendale Ferry Company was convicted of operating a ferry without paying the privilege tax required by statute and appeals.

101 Miss.—5

The facts are fully stated in the opinion of the court.

*W. R. Satterfield* and *J. T. Lowe,* for appellants.

Our contention is, that the tax sought to be levied in this case, and collected, and for which the defendants were convicted and fined, was not a tax on the individual owners of the boat, or on the franihise, or on the landing or wharf, but that same was an attempt to tax the business of operating a ferry, which is simply carrying people and freight across the Mississippi river, from Helena, Arkansas, to Glendale, Mississippi, and back. Sustaining us in this contention, we beg to cite the following cases: *Carter* v. *State,* 60 Miss. 456; *Harness* v. *Williams, Trustee,* 64 Miss. 600; *Alcorn* v. *State,* 71 Miss. 464.

And we now submit that the said business of carrying freight and passengers from Helena, Arkansas, to Glendale, Mississippi, and back again, as aforesaid, is commerce between the said states of Arkansas and Mississippi, such as is within the power of congress, exclusively, to regulate. See *Glouster Ferry Co.* v. *Penn.,* 114 U. S. Rep. 196 (29 L. Ed.), p. 158. Note the language of the court.

"As to the first reason thus expressed, it may be answered that the business of landing and receiving passengers and freight at the wharf in Philadelphia is a necessary incident to, indeed, is a part of their transportation across the Delaware river, from New Jersey. Without it that transportation would be impossible. Transportation implies the taking up of persons or property at some point and putting them down at another. A tax, therefore, upon such receiving and landing of passengers and freight is a tax upon their transportation, that is, upon the commerce between two states involved in such transportation."

Further citing: "The transportation as to passengers is not completed until they are disembarked at the

pier of the city to which they are carried; and, as to freight until it is landed upon such pier, and all restraints by exactions, in form of taxes, upon such transportation, or upon acts necessary to its completion, are so many invasions of the exclusive power of congress to regulate that portion of commerce between the states.'' *St. Clair County case* reported in 192 U. S. Rep. 454; L. C. P. Ed., vol. 48, p. 518; *Covington Bridge case,* U. S. Rep., sec. 154, p. 204; 38 L. Ed., p. 962; *Postal Telegraph Co.* v. *Wirt Adams,* cited in 71 Miss. 555.

*Jas. R. McDowell,* assistant attorney-general, for appellee.

I think it beyond dispute that the state would have a right to require a privilege license from the appellant if it stopped at two landings in Mississippi and carried freight and passengers from one point in the state to another and also to points out of the state. Such, however, seems not to be the case. The only business this ferry carries on is the carrying of freight and passengers from Glendale, Mississippi, to Helena, Arkansas. It remains, therefore, to determine whether the collection of a privilege license from the company doing only an interstate business would be an interference with interstate commerce under the Constitution of the United States.

There seems to be two different lines of decisions, and I shall cite the court a few cases and submit the question without argument. *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S. 365, 27 L. Ed. 419; *Maine v. Grand Trunk Railway,* 35 L. Ed. 994; *Gloster Ferry Company* v. *Pennsylvania,* 114 U. S. 196-218, 29 L. Ed. 158; *Crutcher* v. *Kentucky,* 35 L. Ed. 649, 47 L. Ed. 419; 10 Am. Dig., p. 791, sec. 119.

Argued orally by *J. F. Lowe,* for appellant.

MAYES, C. J., delivered the opinion of the court.

Section 3814 of the Code of 1906 provides that "each steam ferry operated in the state, in whole or in part, on any stream," shall pay a privilege tax of $150. The Helena-Glendale Steam Ferry Company is owned by Don G. Owen and H. C. Murnan as partners. The domicile of the partnership, its members, and the ferryboat, is at Helena, Phillips county, Ark. In October, 1910, the owners were indicted in Tunica county, Miss., for exercising the privilege of operating a steam ferry in this state without paying the privilege tax required by the statute above quoted. By agreement a trial was had before the judge, sitting as judge and jury, on an agreed statement of facts, and the court found the defendants guilty and fined them in the sum of seven hundred and fifty dollars and costs, from which conviction an appeal is prosecuted to this court.

In addition to the facts already stated, the agreed facts show that the ferry company at the time of the indictment was engaged in ferrying passengers and freight for hire across the Mississippi river from the city of Helena, Ark., to the landing known as Glendale, in Tunica county. It is further shown that the ferry company owned the land at Glendale, and makes regular trips from Helena to Glendale; that the sole business engaged in by the ferry company consists in ferrying passengers and freight from Helena, Ark., to Glendale, Miss., and back, Glendale being just opposite Helena and directly across the river. The ferryboat never stops at the Mississipi side, except to load and unload freight and passengers. In other words, all the business engaged in by this ferry company is simply to come from the Arkansas side to the Mississippi side, and return from the Mississippi side to the Arkansas side. It makes just this one landing in Mississippi, and is exclusively engaged in ferrying passengers and freight from Missis-

sippi to Arkansas and back. The question is: Has the state of Mississippi the right to levy this tax?

An examination of the case of *Gloucester Ferry Company* v. *Commonwealth of Pennsylvania,* 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158, seems to settle this question. In that case the United States supreme court expressly holds that a state has no power to levy any tax so as to impose any burden on interstate commerce. The court says: "It matters not that the transportation is made in ferryboats which pass between the states every hour of the day. The means of transportation of passengers and freight between the states does not change the character of the business as one of commerce, nor does the time within which the distance between the states may be traversed. Commerce among the states consists of intercourse and traffic between their citizens, and includes the transportation of passengers and property and the navigation of public waters for that purpose, as well as the purchase, sale, and exchange of commodities. The power to regulate that commerce, as well as commerce with foreign nations, vested in congress, is the power to prescribe the rules by which it shall be governed—that is, the conditions upon which it shall be conducted; to determine when it shall be free, and when subject to duties or other exactions. . . . Necessarily that power alone can prescribe regulations which are to govern the whole country. And it needs no argument to show that the commerce with foreign nations and between the states, which consists in the transportation of persons and property between them, is a subject of national character and requires uniformity of regulation. Congress alone, therefore, can deal with such transportation. Its nonaction is a declaration that it shall remain free from burdens imposed by state legislation. Otherwise there would be no protection against conflicting regulations of different states, each legislating in favor of its own citizens and products

against those of other states. It was from apprehension of such conflicting and discriminating state legislation, and to secure uniformity of regulation, that the power to regulate commerce with foreign nations and among the states was vested in congress.''

The court further says that if such a tax—speaking of a tax imposed upon the capital of all corporations engaged in foreign or interstate commerce for the use of wharves, etc.—"can be levied at all, its amount will rest in the discretion of the state. It is idle to say that the interests of the state would prevent oppressive taxation. Those engaged in foreign and interstate commerce are not bound to trust to its moderation in that respect. They require security. And they may rely on the power of congress to prevent any interference by the state until the act of commerce—the transportation of passengers and freight—is completed. The only interference of the state with the landing and receiving of passengers and freight which is permissible is confined to such measures as will prevent confusion among the vessels, and collision between them, insure the safety and convenience, and facilitate the discharge or receipt, of their passengers and freight, which falls under the general head of port regulations,'' etc.

While it is true that this case is speaking of a tax imposed upon the capital of the corporation engaged in interstate commerce, while the tax under consideration is a mere privilege tax, the principle involved in each case is the same. The court holds that, when one is engaged in interstate commerce exclusively, no burdens can be imposed upon it. The harm resulting to interstate traffic by allowing any state to impose a privilege tax is just the same in effect as if the tax imposed is a property tax. It is imposing a burden by taxation, by whatever name the tax may be called, or by whatever method it may be imposed. A state might impose so great a privilege tax as to prohibit a ferryboat from

landing altogether. So it is said by the court in the above case: "It is idle to say that the interests of the state would prevent such tax, because those engaged in interstate commerce cannot be compelled to trust to its moderation in that respect. They require security. And they may rely on the power of congress to prevent any such oppressive taxation on the part of the state."

In the above case the supreme court of the United States holds that the only burdens which the state may impose upon interstate commerce are those known as "harbor duties or port charges exacted by the state from vessels in its harbors, or from their owners, for other than sanitary purposes are sustained. We say for other than sanitary purposes, for the power to prescribe regulations to protect the health of the community and prevent the spread of disease is incident to all local municipal authority, however much such regulations may interfere with the movements of commerce. But independently of such measures the state may prescribe regulations for the government of vessels whilst in its harbors. It may provide for their anchorage or mooring, so as to prevent confusion and collision. It may designate the wharves at which they shall discharge and receive their passengers and cargoes, and require their removal from the wharves when thus not engaged, so as to make room for other vessels. It may appoint officers to see that the regulations are carried out, and impose penalties for refusing to obey the directions of such officers; and it may impose a tax upon vessels, sufficient to meet the expenses attendant upon the execution of the regulations. The authority for establishing regulations of this character is found in the right and duty of the supreme power of the state to provide for the safety, convenience, and undisturbed enjoyment of property within its limits; and charges incurred in enforcing the regulations may properly be considered as compensation for the facilities furnished to the vessels. Should such

regulations interfere with the exercise of the commercial power of congress, they may at any time be superseded by its action. It was not intended, however, by the grant to congress, to supersede or interfere with the power of the states to establish police regulations for the better protection and enjoyment of property." The supreme court of the United States has been very clear in its rulings upon this subject.

This case is unlike the case of *Pullman Co.* v. *Adams,* 78 Miss. 814, 30 South. 757, 48 Am. St. Rep. 647. In that case the Pullman Company was engaged in an interstate and an intrastate business, and the tax sought to be collected was on the intrastate business; that is to say, the local business of the Pullman Company. No attempt was made to collect a tax for doing an interstate business, and the court stated, in so far as the interstate business was concerned, that it could conduct it without paying the slightest heed to the act, because it did not apply to or in any degree affect the company in regard to that portion of its business. In the Pullman Company case this court practically held as we now hold, and the case practically concedes that, if there had been any attempt to impose any privilege tax on the interstate business of the company, the act could have had no application, and would have been unconstitutional as an attempt to regulate interstate commerce. In the case of *Adams Express Co.* v. *Ohio State Auditor,* 165 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965, the supreme court of the United States says: "Again and again has this court affirmed the proposition that no state can interfere with interstate commerce through the imposition of a tax, by whatever name called, which is in effect a tax for the privilege of transacting such commerce." See, also, *St. Clair County* v. *Interstate S. & C. T. Co.,* 192 U. S. 454, 24 Sup. Ct. 300, 48 L. Ed. 518. Of course, this does not interfere with the power of a state to tax the business done wholly within the

state, or to tax instrumentalities used for such commerce; that is to say, commerce which is wholly within the state, as was done in the Adams case.·

Our attention is called to the case of *Marshall* v. *Grimes*, 41 Miss. 27, wherein it is claimed that this court held that the power to establish and regulate ferries belongs to the state, and is not included in the grant of power to the federal government to regulate commerce with foreign nations and among the several different states, etc. The case of *Marshall* v. *Grimes* involved a different question from the one which is presented in this case. There was no question of taxation, or the imposition of a burden by taxation, involved in that case. What is said in that case as to the power of the states to regulate ferries must be limited to the statement of the rights of the state as contained in the case of Gloucester Ferry Company above referred to; that is to say, to such regulations as will prevent confusion among vessels, and prevent collisions, and such other regulations as may fall under the general head of port regulations, etc. If the case in 41 Miss. 27, does hold, or is intended to hold, that the state has any power to impose any burden by taxation on interstate commerce, it is in direct conflict with the holdings of the United States supreme court on that subject, and to the extent that it so conflicts it must be overruled.

*Reversed and remanded.*