GATES *v.* GREENVILLE BRIDGE & FERRY COMPANY.

Opinion delivered March 30, 1931.

*David A. Gates, Hal L. Norwood,* Attorney General, and *Walter L. Pope,* Assistant, for appellant.

*Wynn & Hafter, E. P. Toney* and *N. B. Scott,* for appellee.

MEHAFFY, J. David A. Gates, Commissioner of Revenues, issued an order under the provisions of act 181 of the Acts of 1929 directed to the sheriff of Chicot County commanding him to levy upon and sell the property of the Greenville Bridge & Ferry Company or so much thereof as may be necessary for the payment of tax, penalty, cost, etc.

Section 6 of the act under which the order was issued contains the following provision: ''Every person, firm or corporation who shall operate a privately owned toll bridge or ferry in this State shall pay for the privilege of operating the same, in addition to all taxes now levied, a State license tax of four per centum of the gross amount of all fares and charges collected by said bridge or ferry, which said privilege tax shall be paid quarterly.''

The appellee, the Greenville Bridge & Ferry Company, filed its complaint in the Chicot Chancery Court against David A. Gates, Commissioner of Revenues of Arkansas, and Calmes Merritt, sheriff of Chicot County, Arkansas, praying for an order enjoining and restrain-

ing the appellants from levying on appellee's property and for the cancellation of the writ or orders issued by the Commissioner of Revenues.

David A. Gates, the commissioner, filed answer alleging that the orders issued by him were under and by virtue of act 181 of the Acts of 1929, and that the order was directed to the sheriff of Chicot County directing him to levy upon and sell the property of appellee or so much as might be necessary for the payment of a tax due the State of Arkansas with penalty added in the sum of $3,906.

The following statement was filed, and no other evidence was introduced: "It is agreed by and between the parties to this cause that the plaintiff is a corporation chartered under the laws of the State of Delaware operating a ferry boat for the transportation of vehicles and passengers across the Mississippi River from Greenville, Mississippi, to a point on the Arkansas shore; that the corporation is engaged exclusively in interstate commerce, and its boats are registered at the port of registry, Baton Rouge, Louisiana; that the situs of all its property is in Mississippi about four miles south of Greenville; that it has no property in Arkansas except a landing dock and property for the facilities of landing, that its boats only stop on the Arkansas side to load and unload passengers and vehicles; that the corporation has never paid taxes in Arkansas, and that Mrs. Kate C. Archer, the lessor of the plaintiff, has paid taxes on the land.

"It is further agreed that the gross proceeds of the corporation from April 23, 1929, to June 1, 1930, from tolls collected from passengers and vehicles crossing from both sides of the river is $65,100; that 50 per cent. of the tolls originate from States other than Mississippi and Arkansas; that approximately $32,750 originates in the State of Mississippi and in the State of Arkansas; that of the $32,750, one-half thereof originates in the State of Arkansas; that the embarkation of automobiles including cars from all States which cross the river is about one-

half on the Mississippi side and one-half on the Arkansas side.

"It is further agreed by the parties of this action that the Greenville Bridge & Ferry Company has not made the quarterly reports which are required of ferries by act number 181 of the Acts of Arkansas for the year 1929; that it had not paid the tax prescribed by said act. It is further agreed that none of the boats of the plaintiff are registered or located in any part of Arkansas.

"It is further agreed that an agent of the Commissioner of Revenues for the State of Arkansas has made a demand upon the plaintiff company for its records of tolls collected by said ferry during the period of April 23, 1929, to June 1, 1930, and that said demand was made upon Mr. J. S. Hafter, who is an officer of the company, being secretary, at his office in the city of Greenville, Mississippi; that the verbal demand so made was refused, which demand was made by C. M. Matthews. The demand was made in Greenville, Mississippi.

"It is further agreed that the Greenville Bridge & Ferry Company has not qualified under the laws of the State of Arkansas as a nonresident corporation and has no agent in the State of Arkansas upon whom service can be had."

The court issued an order enjoining the defendants from levying upon the property of appellees for the tax claimed in the suit and held that the tax of four per cent. provided in act 181 as applicable to appellee is a tax and a burden upon interstate commerce, and that the act was intended only as a tax on intrastate business.

The only question for us to determine is whether the tax provided for in act 181 is a tax or burden on interstate commerce, that is whether as applied to appellee it violates the Constitution of the United States.

The State has authority to tax foreign corporations for the right or privilege of doing business in the State, although the tax may incidently or remotely affect interstate commerce. *Ark. & Memphis Ry. Bridge & Term-*

*inal Co.* v. *State ex rel. Atty. Genl.,* 174 Ark. 420, 295 S. W. 378.

As stated by the Supreme Court of the United States: ''The turning point in these decisions is whether in its incidence the tax affects interstate commerce so directly and immediately as to amount to a genuine and substantial regulation of or restraint upon it, or whether it affects it only incidentally or remotely so that the tax is not in reality a burden, although in form it may touch and in fact distinctly affect it. *Hump Hairpin Mfg. Co.* v. *Emerson,* 258 U. S. 290, 42 S. Ct. 305, 66 Law. Ed. 622.

The agreed statement in this case shows that the appellant is a foreign corporation operating a ferry boat for the transportation of vehicles and passengers across the Mississippi River between Mississippi and Arkansas; that it is engaged exclusively in interstate commerce, and has no property in Arkansas except a landing dock and property for the facilities of landing; its boats only stop on the Arkansas side to load and unload passengers and vehicles. It has never qualified under the laws of the State of Arkansas as a nonresident corporation and had no agent in Arkansas upon whom service can be had. It therefore appears that the only business appellee does in Arkansas is a part of interstate transportation. It loads and unloads passengers and vehicles that are being carried in interstate commerce, and this business is not merely an incident, but is a part, of the interstate transportation.

In a case decided by the Circuit Court of Appeals of the 5th Circuit where the city of Natchez had adopted an ordinance which prohibited the operation of a ferry from any other landing than the one fixed in the ordinance and prescribing rates, character of boats, and granting exclusive privilege to operate a ferry, the court said: ''It is clearly held that, while the States, and, consequently municipal corporations acting under their authority, may adopt and enforce reasonable regulations for the safety and convenience of the public using ferries, and

may fix reasonable rates to be charged in carrying passengers, vehicles, and freight from their own shores, they cannot prohibit the operation of a ferry, nor exact a license fee for the privilege of landing or taking passengers, vehicles, etc.'' *McNeely* v. *Natchez,* 4 Fed. (2d) 899.

"Regulation of interstate and foreign commerce is a matter committed exclusively to the control of Congress, and the rule is settled by innumerable decisions of this court, unnecessary to be cited, that a State law which directly burdens such commerce by taxation or otherwise constitutes a regulation beyond the power of the State under the Constitution. It is likewise settled that transportation by ferry from one State to another is interstate commerce and immune from the interference of such State legislation. * * * While a State has power to tax property having a situs within its limits, whether employed in interstate commerce or not, it cannot interfere with interstate commerce through the imposition of a tax which is in effect a tax for the privilege of transacting such commerce.'' *Helson & Randolph Co-partners* v. *Kent,* 279 U. S. 245, 49 S. Ct. 279.

A tax on the privilege of operating a ferry, where the ferry company is exclusively engaged in ferrying passengers across a river from one State to another, is a burden on interstate commerce which a State may not impose. *Helena-Glendale Steam Ferry Co.* v. *State,* 101 Miss. 65, 57 So. 362, Ann. Cas. 1914B, 682; *Phil. & So. N. S. S. Co.* v. *Pa.,* 122 U. S. 326, 7 S. Ct. 1118.

"While it is conceded that the property in a State belonging to a foreign corporation engaged in foreign or interstate commerce may be taxed equally with like property of a domestic corporation engaged in that business, we are clear that a tax or other burden imposed on the property of either corporation because it is used to carry on that commerce or upon transportation of persons or property or for the navigation of the public waters over which the transportation is made is invalid and void, as

an interference with and obstruction of the power of Congress in the regulation of such commerce.'' *Glouces-ter Ferry Co.* v. *Pa.,* 114 U. S. 196, 5 S. Ct. 826.

The court also said in the above case: "If such a tax can be levied at all, its amount will rest in the discretion of the State. It is idle to say that the interest of the State would prevent oppressive taxation. Those engaged in foreign and interstate commerce are not bound to trust to its moderation in that respect; they require security. And they may rely on the power of Congress to prevent any interference by the State until the act of commerce, the transportation of passengers and freight, is completed. The only interference of the State with the landing and receiving of passengers and freight, which is permissible, is confined to such measures as will prevent confusion among the vessels and collisions between them, insure their safety and convenience, and facilitate the discharge or receipt of their passengers or freight, which fall under the general head of port regulations.''

Receiving and landing passengers is not only incident to their transportation, but a necessary part of it. The transportation is not complete until the passengers have disembarked or the freight has been unloaded, and the loading of the freight and passengers on the Arkansas side in the instant case and discharging of freight and passengers is a necessary part of the transportation and the tax levied by the act under consideration is a tax on the right to take on and discharge freight and passengers and is therefore a tax or burden on interstate commerce.

The appellee has no property subject to taxation in Arkansas; the real estate where passengers and freight are discharged or taken on, belongs to another person who pays the taxes on such property. The ferry boat belonging to the company can only be taxed at its home port.

It therefore appears clear that the tax sought to be collected is a tax on interstate commerce and invalid. The decision of the Supreme Court of the United States last referred to, we think, settles beyond controversy that this tax is void. There are many other decisions to which attention might be called among which are: *Port of Richmond and Bergen Point Ferry Co.* v. *Board of Chosen Freeholders of Hudson County*, 234 U. S. 317, 34 S. Ct. 821; *City of Sault St. Marie* v. *International Transit Co.*, 234 U. S. 333, 34 S. Ct. 826; *Fargo* v. *Mich.*, 221 U. S. 230, 7 S. Ct. 857.

The appellant cites and relies on Cooley's Constitutional Limitations, 8th Ed., vol. 2, 1296, and the case of *Conway* v. *Taylor*, 1 Black 603, 17 Law. Ed. 191, but the question involved in the section referred to in Cooley's and the case cited are not the questions involved here. There is no contention that the State would not have the right to make reasonable regulations and inspection for the benefit of the public. This is the effect of the holding of all the authorities, but we have not had our attention called to any authority that would authorize the taxing of the right or privilege to take on or discharge passengers or freight, where the only business engaged in is interstate commerce.

The decree is affirmed.