# CITY OF SAULT STE. MARIE *v.* INTERNATIONAL TRANSIT COMPANY.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF MICHIGAN.

No. 323. Argued March 20, 1914.—Decided June 8, 1914.

A State may not make commercial intercourse with another State or a foreign country a matter of local privilege and require that it cannot be carried on without its consent, and to exact a license fee as the price of that consent.

Transportation between States and foreign countries is within the protection of the constitutional grant to Congress, and this includes transportation by ferry. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196.

One otherwise enjoying full capacity for the purpose of carrying on interstate or foreign commerce cannot be compelled to take out a local license for the mere privilege of carrying it on.

An ordinance enacted by the city of Sault Ste. Marie under state authority, requiring a license fee for the operation of ferries to the Canadian shore opposite, *held* unconstitutional, as applied to the owners of a ferryboat plying from the Canadian shore, as a burden on interstate commerce.

*Quære,* whether such an ordinance is void as violative of Article I of the Treaty of 1909 with Great Britain.

194 Fed. Rep. 522, reversed.

THE facts, which involve the right of the State, or a municipality acting under its authority, to establish ordinances regulating maintenance of ferries between its ports and one of a foreign government and the construction of the treaty of 1909 with Great Britain, are stated in the opinion.

*Mr. John W. Shine,* with whom *Mr. F. T. McDonald* was on the brief, for appellants:

The ordinance is not invalid as in violation of the commerce clause of the Constitution.

A ferry is in respect to the landing and not on the water. The point of departure is the seat, the base, the home of the ferry. *Conway* v. *Taylor,* 1 Bl. 603; *Louisville Ferry Co.* v. *Kentucky,* 188 U. S. 385, 394; *Memphis* v. *Overton,* 3 Yerg. (Tenn.) 387, 390; *State* v. *Faudre,* 54 W. Va. 122; *Powers* v. *Athens,* 99 N. Y. 592.

Ferries are local in their nature and the regulation of ferries is a matter of local concern. *Chilvers* v. *People,* 11 Michigan, 51; *St. Clair County* v. *Interstate Sand Co.,* 192 U. S. 454.

In all local matters state statutes are valid until superseded by act of Congress. *Cooley* v. *Port Wardens,* 12

How. 310; *Mobile* v. *Kimball*, 102 U. S. 691, 702; *Atlantic &c. Co.* v. *Philadelphia*, 190 U. S. 160; *Bowman* v. *Railroad Co.*, 125 U. S. 465, 507; *Leisy* v. *Hardin*, 135 U. S. 100; *Stoughtenburgh* v. *Hennick*, 129 U. S. 141; *Telegraph Co.* v. *Pendleton*, 122 U. S. 347; *Ouachita Packet Co.* v. *Aiken*, 121 U. S. 444; *Robbins* v. *Taxing District*, 120 U. S. 489; *Wabash Railway* v. *Illinois*, 118 U. S. 557; *Morgan* v. *Louisiana*, 118 U. S. 455; *Cardwell* v. *Bridge Co.*, 113 U. S. 205, 210; Willoughby's Fed. Const., § 309.

The privilege of keeping a ferry over boundary streams with the right to take tolls for passengers and property is grantable by the State. *Gloucester Ferry Case*, 114 U. S. 196, 217; *State* v. *Faudre*, 54 W. Va. 122; *Ferry Co.* v. *Russell*, 52 W. Va. 356; *Cross* v. *Hopkins*, 6 W. Va. 323; *Carroll* v. *Campbell*, 108 Missouri, 550; *State* v. *Sickmann*, 65 Mo. App. 499; *Tugwell* v. *Eagle Pass Ferry Co.*, 74 Texas, 480; *Parsons* v. *Hunt*, 98 Texas, 420; *Nixon* v. *Reid*, 8 So. Dak. 507; *Hatten* v. *Turnman* 123 Kentucky, 844.

The right to establish and regulate ferries over boundary streams is among the powers reserved to the State. *Gibbons* v. *Ogden*, 9 Wheat. 1; *In re Young*, Fed. Cas. No. 18,150; *Memphis* v. *Overton*, 11 Tennessee (3 Yerg.), 387; *People* v. *Babcock*, 11 Wend. 587; *Jones* v. *Fanning*, 1 Morris, 348; *Mills* v. *St. Clair Co.*, 7 Illinois, 197, 225, aff'd 8 How. 569; *Phillips* v. *Bloomington*, 1 G. Greene, 498; *Fanning* v. *Gregoire*, 16 How. 524; *Chosen Freeholders* v. *State*, 24 N. J. Law, 718; *Newport* v. *Taylor*, 16 B. Mon. 699; *Chispella* v. *Brown*, 14 La. Ann. 185; *Minturn* v. *LaRue*, 23 How. 435; *Conway* v. *Taylor*, 1 Black, 603; *Chilvers* v. *People*, 11 Michigan, 43; *Marshall* v. *Grimes*, 41 Mississippi, 27; *Burlington* v. *Davis*, 48 Iowa, 133; *St. Louis* v. *Waterloo Ferry Co.*, 14 Mo. App. 216; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365; *Tugwell* v. *Eagle Pass Ferry*, 9 S. W. Rep. 120; *S. C.*, 13 S. W. Rep. 654; *Madison* v. *Abbott*, 118 Indiana, 337; *Carroll* v. *Camp-*

*bell*, 108 Missouri, 550; *State* v. *Sickmann*, 65 Mo. App. 499; *Nixon* v. *Reid*, 67 N. W. Rep. 57; *Sisterville Ferry Co.* v. *Russell*, 52 W. Va. 356; *State* v. *Faudre*, 54 W. Va. 122; *N. Y. C. & H. R. R. Co.* v. *Freeholders, N. J.*, 74 Atl. Rep. 954; *Port Richmond Ferry Co.* v. *Freeholders, N. J.*, 77 Atl. Rep. 1046.

The right of the State to establish and regulate ferries over boundary streams between States and foreign countries has been sustained. *People* v. *Babcock*, 11 Wend. 587; *Chilvers* v. *People*, 11 Michigan, 43; *Tugwell.* v. *Eagle Pass Ferry Co.*, 9 S. W. Rep. 120, *S. C.*, 13 S. W. Rep. 654.

This court has repeatedly held that the power over ferries on boundary streams was reserved to the States. *Gibbons* v. *Ogden*, 9 Wh. 1; *In re Young*, Fed. Cas. No. 18,150; *Mills* v. *St. Clair County*, 8 How. 569; *Fanning* v. *Gregoire*, 16 How. 524; *Minturn* v. *LaRue*, 23 How. 435; *Conway* v. *Taylor*, 1 Black, 603; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365.

Ferries are in aid of commerce and not an interference with commerce. *Gibbons* v. *Ogden*, 9 Wh. 1, 235; *Fanning* v. *Gregoire*, 16 How. 524; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365.

Where a doubt arises as to the restriction of the commerce clause, it is to be decided in favor of the State. *Bank* v. *Tennessee*, 104 U. S. 495; *Railroad Co.* v. *Comrs.*, 103 U. S. 1; *Wilson* v. *Gains*, 103 U. S. 417; *Railroad Co.* v. *Hamblen Co.*, 102 U. S. 273; *Railroad Co.* v. *Gains*, 97 U. S. 697; *Ferry Co.* v. *East St. Louis*, 102 Illinois, 570. See *Ferry Co.* v. *East St. Louis*, 107 U. S. 365.

The acts of Congress relative to the licensing and enrollment of vessels do not interfere with the regulation of ferries by the States. *Conway* v. *Taylor*, 1 Bl. 603; *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365; *The Nassau*, 182 Fed. Rep. 696; affirmed in part, 110 C. C. A. 184.

The fact that some articles of freight are also carried on the ferryboat does not change or affect the rule applied

to ferries. St. Clair County v. Interstate Sand Co., 192 U. S. 458; § 2972, Rev. Stat.

A license fee imposed as a condition of granting a ferry license is not a tax on commerce within the meaning of the commerce clause of the Constitution. Wiggins Ferry Co. v. East St. Louis, 102 Illinois, 560, S. C., 107 U. S. 365; Chilvers v. People, 11 Michigan, 43; Ash v. People, 11 Michigan, 347; Kitson v. Ann Arbor, 26 Michigan, 324; McQuillin, Mun. Ord. Co., § 409.

The power of the State to license and regulate ferries includes the power to fix rates for the ferriage of persons and property. Fanning v. Gregoire, 16 How. 524; Chosen Freeholders v. State, 24 N. J. Law, 718; State v. Sickmann, 65 Mo. App. 499.

The fact that defendant in error is a foreign corporation does not affect the right of the State to regulate ferries. Port Richmond Ferry Co. v. Board of Chosen Freeholders, 77 Atl. Rep. 1046.

The ordinance of the city of Sault Ste. Marie regulating ferries on St. Mary's river does not violate the treaty between Great Britain and the United States.

The ordinance does not interfere with the provisions of the treaty that "navigable boundary waters shall forever continue free and open for the purpose of commerce to inhabitants and to ships, vessels and boats of both countries equally." Fanning v. Gregoire, 16 How. 524; Conway v. Taylor, 1 Bl. 603; Escanaba Trans. Co. v. Chicago, 107 U. S. 678.

Mr. Henry E. Bodman, with whom Mr. Alexis C. Angell, Mr. Herbert E. Boynton and Mr. James Turner were on the brief, for appellee.

MR. JUSTICE HUGHES delivered the opinion of the court.

This suit was brought by the International Transit Company, a Canadian corporation, to restrain the enforce-

ment of an ordinance adopted, in the year 1911, by the city of Sault Ste. Marie, Michigan. The ordinance related to the maintaining of ferries from that city across the St. Mary's river to the opposite shore in the Province of Ontario; and the complainant contended that, as applied to it, the ordinance was a violation of the commerce clause of the Federal Constitution and of article I of the treaty of January 11, 1909, 36 Stat. 2448, 2449, between the United States and Great Britain. The District Court granted the relief as prayed (194 Fed. Rep. 522); and this appeal is brought.

The Transit Company holds a license from the Dominion Government to operate a ferry between Sault Ste. Marie, Ontario, and Sault Ste. Marie, Michigan. It owns, and uses in this business, two steam ferryboats of British registry; it leases a private wharf in the City of Sault Ste. Marie, Michigan, and there maintains an office where fares are received. The Canadian license prescribes the frequency of the service and fixes the maximum fares to be charged; it also provides that the licensee shall not 'infringe any of the laws or by-laws or of the regulations' of the United States or of the State of Michigan or 'of the town of Sault Ste. Marie, U. S. A.' in reference to ferriage, 'which may be applicable to the said ferry or such portion thereof as may be within the jurisdiction of any of them.'

The City of Sault Ste. Marie, Michigan, was authorized by its charter to 'establish, license and regulate ferries to and from the city,' and to prescribe rates. The charter also provided: "The council may regulate and license ferries from the city or any place or landing therein to the opposite shore . . . and may require the payment of such reasonable sum for such license as the council shall deem proper; and may impose such reasonable terms and restrictions in relation to the keeping and management of such ferries, and the time, manner and rates of carriage and transportation of persons and property as may be

proper; and provide for the revocation of any such license, and for the punishment, by proper fines and penalties, of the violation of any ordinance prohibiting unlicensed ferries and regulating those established and licensed." Under this authority, the city adopted the ordinance in question. Section one is as follows:

"No person, persons, or company shall operate a ferryboat, or engage in the business of carrying or transporting persons or property thereon from the City of Sault Ste. Marie, Michigan, and across the St. Mary's River to the opposite shore, without first obtaining a license therefor from the Mayor and by otherwise complying with the provisions of this ordinance."

The Mayor was empowered to grant a license upon the payment of fifty dollars annually for each ferryboat engaged in such transportation, and it was further provided that, before any license should be issued, the person or company desiring the same should make application setting forth a schedule of the rates proposed to be charged within the prescribed territory. Additional provisions fixed the period and frequency of service and the rates to be charged from the licensee's dock within the city to the opposite shore. The Mayor was authorized to revoke the license if he was satisfied that any of the provisions of the ordinance were violated. After the passage of this ordinance, one Pocock, operating a ferryboat belonging to the Transit Company without a license having been obtained therefor, was arrested and fined. Alleging the purpose of the city to enforce the ordinance, and its invalidity, the Transit Company then brought this suit.

It will be observed that the question is not simply as to the power of the State to prevent extortion and to fix reasonable ferry rates from the Michigan shore; it is not as to the validity of a mere police regulation governing the manner of conducting the business in order to secure safety and the public convenience. (See *Port Richmond &c.*

*Ferry Co.* v. *Board of Chosen Freeholders, ante,* p. 317, decided this day.) The ordinance goes beyond this. The ordinance requires a municipal license; and the fundamental question is whether in the circumstances shown the State, or the city acting under its authority, may make its consent a condition precedent to the prosecution of the business. If the State, or the city, may make its consent necessary, it may withhold it. The appellee, having its domicile in Canada, is engaged in commerce between Canada and the United States. At the wharf which it leases for the purpose on the American shore, it receives and lands persons and property. Has the State of Michigan the right to make this commercial intercourse a matter of local privilege, to demand that it shall not be carried on without its permission, and to exact as the price of its consent—if it chooses to give it—the payment of a license fee?

This question must be answered in the negative. It is urged, on behalf of the city, that the State either directly or through its municipalities may establish and license ferries—may grant ferry franchises (*Fanning* v. *Gregoire,* 16 How. 524; *Conway* v. *Taylor's Executor,* 1 Black, 603; *Wiggins Ferry Co.* v. *East St. Louis,* 107 U. S. 365). But, since the decision in *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, it has been clear that, whatever authority the State may have for this purpose, it does not go so far as to enable the State to interdict one in the position of the appellee from conducting the commerce in which it is engaged, or justify the State in imposing exactions upon that commerce in the view that business of this character may be carried on only by virtue of its consent express or implied. In that case the ferry company was a New Jersey corporation, receiving and landing its passengers and property at its wharf in Philadelphia in substantially the same manner as the appellee transacts its business at its wharf in Sault Ste. Marie, Michigan. The court held that it was

not within the power of the State to prevent the ferry company from so doing; that this was an essential part of the interstate transportation which the State could not forbid, or burden by a privilege tax. See *Philadelphia & S. Mail Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 343. Referring to foreign commerce, the court said in *Crutcher* v. *Kentucky*, 141 U. S. 47, 57: "Would any one pretend that a state legislature could prohibit a foreign corporation,—an English or a French transportation company, for example,—from coming into its borders and landing goods and passengers at its wharves, and soliciting goods and passengers for a return voyage, without first obtaining a license from some state officer, and filing a sworn statement as to the amount of its capital stock paid in? And why not? Evidently because the matter is not within the province of state legislation, but within that of national legislation." Ferry transportation is placed upon the same footing in this respect by the holding in the *Gloucester Case* (*supra*, pp. 203, 205), the point of the decision being that the transportation was within the protection of the constitutional grant to Congress. "It matters not," said the court, "that the transportation is made in ferry-boats, which pass between the States every hour of the day."

The fundamental principle involved has been applied by this court in recent decisions in a great variety of circumstances, and it must be taken to be firmly established that one otherwise enjoying full capacity for the purpose cannot be compelled to take out a local license for the mere privilege of carrying on interstate or foreign commerce. *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 496; *Leloup* v. *Mobile*, 127 U. S. 640, 645; *Stoutenburgh* v. *Hennick*, 129 U. S. 141, 148; *McCall* v. *California*, 136 U. S. 104, 109; *Norfolk &c. R. R. Co.* v. *Pennsylvania*, 136 U. S. 114; *Crutcher* v. *Kentucky*, *supra*, p. 58; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Western Union Tel. Co.* v. *Kansas*, 216 U. S. 1, 21; *Pullman Co.* v. *Kansas*, 216 U. S. 56;

*International Text Book Co.* v. *Pigg*, 217 U. S. 91, 109; *Oklahoma* v. *Kansas Natural Gas Co.*, 221 U. S. 229, 260; *Buck Stove Co.* v. *Vickers*, 226 U. S. 205, 215; *Crenshaw* v. *Arkansas*, 227 U. S. 389; *Minnesota Rate Cases*, 230 U. S. 352, 400; *Adams Express Co.* v. *New York*, 232 U. S. 14, 31, 32.

Assuming that, by reason of the local considerations pertinent to the operation of ferries, there exists in the absence of Federal action a local protective power to prevent extortion in the rates charged for ferriage from the shore of the State, and to prescribe reasonable regulations necessary to secure good order and convenience, we think that the action of the city in the present case in requiring the appellee to take out a license, and to pay a license fee, for the privilege of transacting the business conducted at its wharf, was beyond the power which the State could exercise either directly or by delegation. In this view, it is unnecessary to consider the question raised with respect to the treaty with Great Britain.

The decree restraining the enforcement of the ordinance in question as against the appellee is affirmed.

*Affirmed.*