PANHANDLE EASTERN PIPE LINE COMPANY *v.* MICHIGAN PUBLIC SERVICE COMMISSION.

1. PUBLIC SERVICE COMMISSIONS—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—GAS—HEARING.

The order of the public service commission, requiring an interstate natural gas pipe-line company to cease and desist from making direct sales and deliveries of natural gas to industries in this State, located in municipalities already serviced by a public utility, without obtaining a certificate of public convenience and necessity from the commission, is not a denial of such a certificate but permits a hearing on the question of whether or not public convenience and necessity requires the granting of such a certificate to such interstate natural gas pipe-line company (CL 1948, §§ 460.502, 460.505).

REFERENCES FOR POINTS IN HEADNOTES

[4–7] 24 Am Jur, Gas & Oil, §§ 141, 152, 153, 156; 43 Am Jur, Public Utilities and Services, §§ 84, 237.5 (new).
[8] 43 Am Jur, Public Utilities and Services, § 10.

2. SAME—CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY—JU-
DICIAL REVIEW OF ORDERS.

An order granting or denying a certificate of public conven-
ience and necessity, made after statutory hearing by the
public service commission, is accorded judicial review by
statute (CL 1948, §§ 460.505, 460.506).

3. SAME—JURISDICTION—GAS—DIRECT SALES TO CONSUMERS.

An interstate natural gas pipe-line company may test a State
public service commission's jurisdiction to regulate the com-
pany's direct sales to consumers within the State at time
the commission attempts to exercise jurisdiction (CL 1948,
§ 460.502).

4. GAS—INTERSTATE COMMERCE—SCOPE OF FEDERAL REGULATION.

The Federal natural gas act delegated to the Federal power
commission the power to regulate the transportation of nat-
ural gas in interstate commerce, its sale in interstate com-
merce for resale, and natural gas companies engaged in such
transportation or sale but direct sales for consumptive use of
whatever sort were excluded (15 USC, § 717).

5. SAME—SCOPE OF FEDERAL REGULATION.

The basic purpose of the Federal natural gas act was to occupy
a field of regulation in which the States may not act (15 USC,
§ 717).

6. SAME—INTERSTATE COMMERCE—SALES FOR RESALE—SALES TO CON-
SUMERS.

Sales of natural gas transported into a State for resale are
considered to be not local in character and, even in the
absence of congressional action, not subject to State regu-
lation, but sales to consumers, even though such sales are
in interstate commerce, are considered local in character
and are, in the absence of congressional regulation, subject
to State regulation (15 USC, § 717; CL 1948, § 460.502).

7. SAME—INTERSTATE PIPE-LINE COMPANY—DIRECT SALES TO CON-
SUMERS—REGULATION BY STATE PUBLIC SERVICE COMMISSION.

The sale of natural gas in this State by an interstate natural
gas pipe-line company direct to consumers for their own
use is within the jurisdiction of the State public service
commission (CL 1948, § 460.502).

8. PUBLIC SERVICE COMMISSIONS—REGULATION OF PUBLIC UTILITIES.

It is the general policy of the law that a public utility should
be subjected to governmental regulation.

REID, DETHMERS, and CARR, JJ., dissenting.

Appeal from Ingham; Eger (Paul G.), J. Submitted April 14, 1950. (Docket No. 27, Calendar No. 43,716.) Decided October 10, 1950. Affirmed by the Supreme Court of the United States May 14, 1951.

Bill by Panhandle Eastern Pipe Line Company against Michigan Public Service Commission to review order requiring plaintiff to cease and desist from furnishing industrial users without certificate of convenience and necessity. Michigan Consolidated Gas Company intervened. Decree for plaintiff. Defendant and intervenor appeal. Reversed.

*Ballard, Jennings, Bishop & Ellsworth* (*Robert P. Patterson, Samuel H. Riggs* and *Robert M. Morgenthau,* of counsel), for plaintiff.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Archie C. Fraser, Charles M. A. Martin,* and *Albert J. Thorburn,* Assistants Attorney General, for defendant.

*Dyer, Angell, Meek & Batten* (*James W. Williams,* of counsel), for intervenor.

BOYLES, C. J. The issue in this case is whether the direct sale of natural gas to local consumers in Michigan by the plaintiff, an interstate pipe-line company, is within the jurisdiction of the Michigan public service commission.

The Panhandle Eastern Pipe Line Company (hereinafter called Panhandle), a Delaware corporation, is engaged in the interstate transportation of natural gas by pipe line from Texas and other States into Michigan. It is an interstate natural gas pipe-line company, subject to regulation by the Federal power commission under the Federal natural gas act (15 USC, § 717 *et seq.*). It sells the greater part of its natural gas to local public utilities for

resale for ultimate consumption. A part of its natural gas is sold by it direct to local industrial consumers, known as "direct industrial sales." In 1945, it entered into a contract with the Ford Motor Company to sell natural gas direct to said company at its Dearborn plant for its own consumption. The plant of said company is within a municipality already served by the Michigan Consolidated Gas Company, a public utility engaged in selling natural gas to consumers in said municipality after having been granted a certificate of public convenience and necessity to do so. Panhandle also sought other local customers, and publicly announced an intention to sell directly to other industrial consumers when possible.

The said Michigan Consolidated Gas Company filed a complaint with the Michigan public service commission and, after notice and a hearing, the commission ordered that Panhandle "cease and desist from making direct sales and deliveries of natural gas to industries within the State of Michigan, located within municipalities already being served by a public utility, until such time as it shall have first obtained a certificate of public convenience and necessity from this commission to perform such services."

Section 2 of PA 1929, No 69 (CL 1948, § 460.502 [Stat Ann § 22.142]), under which the Michigan public service commission assumed jurisdiction to make said order, provides:

"No public utility shall hereafter * * * render any service for the purpose of transacting or carrying on a local business * * * in any municipality in this State where any other utility or agency is then engaged in such local business and rendering the same sort of service, * * * until such public utility shall first obtain from the commission a certificate that public convenience and neces-

sity requires or will require such  *  *  *  operation."

Panhandle, claiming that said order of the Michigan public service commission prohibited it from selling natural gas in this State direct to a local consumer for its own use, filed in the circuit court of Ingham county the bill of complaint in the instant case to set aside and enjoin enforcement of the commission's order. It added to its bill of complaint the motion made by it before the Michigan public service commission, in which it sought the dismissal of the petition filed there by the Michigan Consolidated Gas Company, and making the claim:

"That the Michigan public service commission has no jurisdiction over the subject matter of the sale of natural gas, a commodity in interstate commerce, by Panhandle Eastern Pipe Line Company to Ford Motor Company,"

and that:

"Panhandle Eastern Pipe Line Company has the right to sell and deliver gas to industrial consumers without regulation by the Michigan public service commission of such interstate commerce."

In the circuit court the Michigan Consolidated Gas Company intervened in the case and, after an extended hearing, the circuit judge entered a decree permanently restraining the Michigan public service commission from interfering in the direct sale of natural gas by Panhandle to the said Ford Motor Company or other industrial users in the State of Michigan. From said decree, the Michigan public service commission and the intervenor, Michigan Consolidated Gas Company, appeal.

Panhandle construes the order of the Michigan public service commission as an absolute denial of the right of Panhandle to sell natural gas in this

State direct to local consumers for their own consumption and use; in other words, that said order denies Panhandle a certificate of public convenience and necessity to sell natural gas direct to local consumers.  We do not so construe the order.  It is, however, a direct order by the Michigan public service commission, finding that it does have jurisdiction to determine whether a certificate of public convenience and necessity shall be granted to Panhandle to carry on said operation.  It denies the right of Panhandle to sell natural gas to the Ford Motor Company or other local consumers for their own consumption, without first obtaining a certificate of public convenience and necessity from the commission.  It leaves the door open for a hearing before the Michigan public service commission as to whether or not public convenience and necessity requires the granting of such a certificate to Panhandle, after a proper hearing on that question.  The statute states what the commission shall take into consideration in determining the question of public convenience and necessity, and what the certificate shall provide.  CL 1948, § 460.505 (Stat Ann § 22.145). If the commission, after such a hearing, should deny such a certificate to Panhandle, the statute affords it a remedy for review in the courts; and, on the contrary, if at such hearing the commission should grant such a certificate to Panhandle, the intervenor herein or any other interested party would likewise have the same right of review.  The statute so provides.  CL 1948, § 460.506 (Stat Ann § 22.146).

In the instant case the bill of complaint was filed and the decree entered in the circuit court, and also the appeal therefrom taken to this Court, prior to the decision of the United States supreme court in *Panhandle Eastern Pipe Line Co.* v. *Public Service Commission of Indiana* (December, 1947), 332 US 507 (68 S Ct 190, 92 L ed 128).  The statute law of

the State of Indiana requires that a certificate of public convenience and necessity be obtained from the Indiana public service commission as a prerequisite to engaging in the operation of a public utility. Burns Indiana Stat Ann § 54.601. In that respect the Indiana law is substantially the same as the statute law of this State (CL 1948, § 460.502 [Stat Ann § 22.142], *supra*). The decision of the United States supreme court in the *Panhandle-Indiana Case, supra,* is so conclusive of the issue now before us that we quote from and adopt it at length, as follows:

"Broadly the question is whether Indiana has power to regulate sales of natural gas made by an interstate pipe-line carrier direct to industrial consumers in Indiana. More narrowly we are asked to decide whether the commerce clause, [US] Const, art 1, § 8, by its own force forbids the appellee, public service commission, to require appellant to file tariffs, rules and regulations, annual reports, et cetera, as steps in a comprehensive plan of regulation preliminary to possible exercise of jurisdiction over rates and service in such sales.[1]

"Panhandle Eastern transports natural gas from Texas and Kansas fields into and across intervening States, including Indiana, to Ohio and Michigan. In Indiana it furnishes gas to local public utility distributing companies and municipalities. These in turn supply the needs of over 112,000 residential, commercial and industrial consumers.

"Since 1942 appellant also has sold gas in large amounts direct to Anchor-Hocking Glass Corporation for industrial consumption.[2] Shortly before

Reporter's Note: The numbered footnotes appear in 332 US 509 *et seq.*

"1 The commission is authorized to take these steps by Indiana statutes creating the State's regulatory scheme for public utilities. Burns Indiana Stat Ann § 54–101 *et seq.*

"2 Appellant's sales to Anchor-Hocking are far larger than sales made to several of the local distributing companies. Thus, in 1943 appellant sold 1,150,279 cubic feet to Anchor-Hocking and only 151,065 cubic feet to the local utility served from the same branch line. * * *

beginning this service appellant had informed a number of its customers, local distributing companies in Indiana, that it intended to render service directly to large industrial consumers wherever possible.[3] Pursuant to that policy, since these proceedings began direct service has been extended to another big industrial user.[4]

"In 1944 the commission initiated hearings relative to direct service by Panhandle Eastern to Indiana consumers. It concluded that 'the distribution in Indiana by Panhandle of natural gas direct to consumers is subject to regulation by this commission under the laws of this State,' notwithstanding any alleged contrary effect of the commerce clause upon appellant's direct sales to industrial users. Accordingly it issued its order of November 21, 1945, for the filing of tariffs, et cetera, as has been stated.

"Early in 1946 Panhandle Eastern brought this suit in a State court to set aside and enjoin enforcement of the order. * * *

"The trial court vacated the orders and enjoined the commission from enforcing them. It accepted appellant's view of the effect of the commerce clause on its operations. The Supreme Court of Indiana reversed that judgment and denied the relief appellant sought. *Public Service Commission* v. *Panhandle Eastern Pipeline Co.*, 224 Ind 662 (71 NE2d 117). It held first that the commission's orders amounted to an unequivocal assertion of power to regulate rates and service on appellant's direct industrial sales and thus presented squarely the question of the commission's jurisdiction over such sales as affected by the commerce clause. The court did not

---

"[3] This was in 1941. In 1943, the chairman of appellant's board stated that 'Panhandle was anxious to take over such business because it was unregulated transaction both as to the Federal power commission and the public service commission of Indiana and that he intended to establish higher industrial rates based on a competitive fuel basis.'

"[4] Prior to the hearings before the commission appellant had entered into arrangements to provide direct industrial service to an E. I. DuPont de Nemours & Company plant near Fortville, Indiana. That service was commenced subsequent to the hearings. * * *

flatly hold that the sales are in interstate rather than intrastate commerce. But, taking them to be of the former kind, it held them nevertheless subject to the State's power of regulation under the doctrine of *Cooley* v. *Board of Wardens,* 12 How (53 US) 299 (13 L ed 996). The court further held that appellant, in making these sales, is a public utility within the meaning and application of the State's regulatory statutes, Burns Indiana Stat Ann §§ 54–105 and Indiana Acts 1945, ch 53, p 110. It is this decision we have to review pursuant to section 237 of the judicial code, 28 USC, § 344(a).[6]

"The effect of the State statutes, whether permitting the filing of the tariffs, et cetera, as information unrelated to further regulation or requiring the filing as initial and integral steps in the regulatory scheme, and thus as presenting at the threshold of the scheme's application the question of the State's power to go further with it, is primarily a question of construction for the State courts to determine. In view of the commission's position, as construed by the State supreme court, we cannot say that the only thing presently involved is the State's power to require the filing of information without reference to its further use for controlling these sales. *Cf. Arkansas Louisiana Gas Co.* v. *Department of Public Utilities,* 304 US 61 (58 S Ct 770, 82 L ed 1149). Here the orders constituted 'an unequivocal assertion of power' to regulate rates and service. Indeed they involve something more than a mere threat to apply the regulatory plan in its later phases. They represent the actual application of that plan in its initial stage. In such a situation appellant was not required to await a further regulatory order before contesting the commission's jurisdiction. *Cf. Pub-*

---

"[6] Several of the local utility companies, which had been intervenors in the proceedings before the commission, were permitted to intervene in the court test of the orders and are appellees here. The National Association of Railroad and Utilities Commissioners has filed a brief *amicus curiae* in support of the commission's position. * * *

*lic Utilities Commission of Ohio* v. *United Fuel Gas Co.*, 317 US 456 (63 S Ct 369, 87 L ed 396). \* \* \*

"The controlling issues therefore are two: (1) Has Congress, by enacting the natural gas act, 52 Stat 821 (15 USC, § 717), in effect forbidden the States to regulate such sales as those appellant makes directly to industrial consumers; (2) if not, are those sales of such a nature, as related to the *Cooley* formula, that the commerce clause of its own force forbids the States to act.

"We think there can be no doubt of the answer to be given to each of these questions, namely, that the States are competent to regulate the sales. \* \* \*

"Three things and three only Congress drew within its own regulatory power, delegated by the act to its agent, the Federal power commission. These were: (1) The transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for resale; and (3) natural gas companies engaged in such transportation or sale.

"The omission of any reference to other sales, that is, to direct sales for consumptive use, in the affirmative declaration of coverage was not inadvertent. It was deliberate. For Congress made sure its intent could not be mistaken by adding the explicit prohibition that the act 'shall not apply *to any other* \* \* \* sale.' (Emphasis added.) Those words plainly mean that the act shall not apply to any sales other than sales 'for resale for ultimate public consumption for domestic, commercial, industrial, or any other use.' Direct sales for consumptive use of whatever sort were excluded.

"The line of the statute was thus clear and complete. It cut sharply and cleanly between sales for resale and direct sales for consumptive uses. No exceptions were made in either category for particular uses, quantities or otherwise. And the line drawn was that one at which the decisions had arrived in

distributing regulatory power before the act was passed.[12]

"Moreover, this unusual legislative precision was not employed with any view to relieving or exempting any segment of the industry from regulation. The act, though extending Federal regulation, had no purpose or effect to cut down State power. On the contrary, perhaps its primary purpose was to aid in making State regulation effective, by adding the weight of Federal regulation to supplement and reinforce it in the gap created by the prior decisions.[13] * * *

"Congress, it is true, occupied a field. But it was meticulous to take in only territory which this court had held the States could not reach.[15]  That area did

---

"[12] 'The Supreme Court has from the beginning allowed the State both to tax and to fix the price on the first sale or delivery of gas or electricity brought in from a sister State when and if this first sale is also necessarily the last sale because consummated by consumption.' Powell, Note, 58 Harv L Rev 1072, 1082.

"[13] In HR Rep No 709, 75th Cong., 1st Sess, the committee on interstate and foreign commerce said of the proposed bill which became the natural gas act: 'It confers jurisdiction upon the Federal power commission over the transportation of natural gas in interstate commerce, and the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use. The States have, of course, for many years regulated sales of natural gas to consumers in intrastate transactions. The States have also been able to regulate sales to consumers even though such sales are in interstate commerce, such sales being considered local in character and in the absence of congressional prohibition subject to State regulation. (See *Pennsylvania Gas Co.* v. *Public Service Commission* [1920], 252 US 23 [40 S Ct 279, 64 L ed 434].)   There is no intention in enacting the present legislation to disturb the States in their exercise of such jurisdiction. However, in the case of sales for resale, or so-called wholesale sales, in interstate commerce (for example, sales by producing companies to distributing companies) the legal situation is different. Such transactions have been considered to be not local in character and, even in the absence of congressional action, not subject to State regulation.  (See *Missouri, ex rel. Attorney General,* v. *Kansas Natural Gas Co.* [1924], 265 US 298 [44 S Ct 544, 68 L ed 1027], and *Public Utilities Commission* v. *Attleboro Steam & Electric Co.* [1927], 273 US 83 [47 S Ct 294, 71 L ed 549].)   The basic purpose of the present legislation is to occupy this field in which the supreme court has held that the States may not act.'

"See, also, HR Rep No 2651, 74th Cong., 2d Sess 1–3; Sen Rep No 1162, 75th Cong., 1st Sess. * * *

"[15] See notes 12 and 13, *supra.*"

not include direct consumer sales, whether for industrial or other uses."

The Federal natural gas act, which the court in the *Panhandle-Indiana Case* thus construed as permitting State regulation of the sale of natural gas by Panhandle direct to industrial users for their own consumption, reads as follows:

"The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas. (June 21, 1938, ch 556, § 1, 52 Stat 821.)" 15 USC (1946 ed), ch 15B, § 717, subd (b).

Since this case was argued and submitted, we have requested counsel to file further briefs limited to the question now before us, and such briefs have been filed. The questions asked of counsel were:

"1. If plaintiff now concedes that the rates may be regulated, how can this be done except through the Michigan public service commission? How can the latter legally regulate without Panhandle submitting itself to its jurisdiction by securing a certificate?

"2. Has Panhandle the right to sell natural gas direct to consumers for their own use and not for resale without a certificate of public convenience and necessity from the Michigan public service commission—in other words, is the authority of Michigan public service commission over such sales limited to regulation of rates and services?"

The issue in this Court has been narrowed down since the decree was entered from which the defendant and the intervening defendant have appealed. The bill of complaint filed in the circuit court by Panhandle, likewise the decree entered there by that court, and the appeal to this Court, in 1946, preceded the decision of the United States supreme court in the *Panhandle-Indiana Case, supra* (December, 1947). Originally, the bill of complaint filed by Panhandle asked that the Michigan public service commission be permanently restrained *from interfering* with the sale of natural gas by Panhandle to the Ford Motor Company or any other industrial consumers in this State. The decree, as entered, permanently restrains the Michigan public service commission "from interfering in the sale of natural gas by the Panhandle Eastern Pipe Line Company, its successors or assigns, to the Ford Motor Company or any other industrial consumers in the State of Michigan."

In this Court, since the decision of the United States supreme court in *Panhandle-Indiana, supra,* Panhandle concedes that "sales of natural gas transported in interstate commerce, when made directly to consumers, are subject to State regulation as to rates."

Therefore, Panhandle now limits the issue, in this Court, to the claim that it has the absolute right in this State to sell natural gas direct to consumers for their own consumption and not for resale, subject only to the State's "regulation" of rates and services. To further delimit the precise issue now before us, Panhandle now specifically claims the right to sell natural gas to the Ford Motor Company and other industrial consumers for their own use, not for resale, in a municipality where the defendant Michigan Consolidated Gas Company is engaged in such local business and rendering the same sort of

service; and claims the right to do so without any express authority, certificate, or approval from the Michigan public service commission, except as to rates.

Since the *Panhandle-Indiana Decision,* Panhandle now necessarily concedes that the Federal natural gas act has not occupied the field of sales of natural gas direct to consumers for their own consumption, not for resale (for example, the proposed sale to Ford Motor Company). In construing the Federal natural gas act, the United States supreme court in that case said:

"The omission of any reference to other sales, that is, to direct sales for consumptive use, in the affirmative declaration of coverage was not inadvertent. It was deliberate. For Congress made sure its intent could not be mistaken by adding the explicit prohibition that the act 'shall not apply *to any other * * * sale.'* (Emphasis added.) Those words plainly mean that the act shall not apply to any sales other than sales 'for resale for ultimate public consumption for domestic, commercial, industrial, or any other use.' Direct sales for consumptive use of whatever sort were excluded.

"The line of the statute was thus clear and complete. It cut sharply and cleanly between sales for resale and direct sales for consumptive uses."

Panhandle also concedes that the defendant Michigan public service commission is the only State agency with power to exercise regulatory authority over the sales of natural gas in this State by a public utility. It now claims, however, the right to make sales of natural gas under the circumstances here involved, without the approval of the Michigan public service commission by the issuing to Panhandle of a certificate of public convenience and necessity from that State agency. As we have pointed out, such sales, without such a certificate, would be in di-

rect violation of PA 1929, No 69, § 2 (CL 1948, § 460.502 [Stat Ann § 22.142]), which expressly declares that no public utility shall render any service in any municipality in this State where any other utility is rendering the same sort of service, until such public utility shall first obtain from the Michigan public service commission a certificate of public convenience and necessity. Furthermore, the defendant commission, were it to enter an order approving rates and services of Panhandle in the absence of such certificate, would also be acting in contravention of the express inhibitions contained in said statute.

Obviously, Panhandle seeks to skim the cream off the local market for natural gas in the municipality where the intervening defendant now provides such services, by selling gas to Ford Motor Company and other industrial users, without regard to the public convenience and necessity for natural gas by other users in the Detroit area, particularly for domestic use. If Panhandle is free to compete at will for such local markets, and take the cream of the business, any other utility providing the same service in the same area might be forced to obtain higher rates for its services when it must obtain its natural gas from Panhandle, and thus would face a distinct disadvantage. The right to exclude such competition, where the general public convenience and necessities so require, has been delegated by the legislature to the Michigan public service commission. It is within the power of that commission, after a proper hearing and upon a proper showing of the facts and the necessities, to determine whether Panhandle, by selling natural gas direct to industrial users in Detroit, would thus serve the public convenience and the necessities of users of natural gas in that area where Panhandle now claims the absolute right to engage in such service.

The *Panhandle-Indiana Case* controls decision here. The right to sell natural gas in this State by Panhandle direct to consumers for their own use and not for resale, in a municipality where another public utility is rendering the same sort of service, is within the jurisdiction of the Michigan public service commission. Any other conclusion would allow Panhandle to engage in such business without either Federal or State control over the right to engage in such services. As a prerequisite to engaging in the business over which the Federal power commission has authority to control, Panhandle must obtain a certificate from that commission. As a prerequisite to engaging in that part of such business in this State over which the Congress has expressly relinquished control, the State regulatory commission has a like power. It has long been the general policy of the law that a public utility should be subjected to governmental control.

The decree enjoining the Michigan public service commission from interfering in the sale of natural gas by Panhandle to industrial consumers is vacated and a decree may be entered in this Court affirming the order of the Michigan public service commission, with costs to appellants.

NORTH, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with BOYLES, C. J.

DETHMERS, J. (*dissenting*). I do not concur with Mr. Chief Justice BOYLES in reversal. I do agree that *Panhandle Eastern Pipe Line Co.* v. *Public Service Commission of Indiana,* 332 US 507 (68 S Ct 190, 92 L ed 128), is conclusive of at least one of the issues before us, *viz.,* that the sales of natural gas here involved are in interstate commerce. Although reasoning in *Federal Power Commission* v. *East Ohio Gas Co.,* 338 US 464 (70 S Ct 266, 94 L ed 268),

may give rise to some uncertainty as to the court's continued adherence to that view, nevertheless the court did not therein expressly overrule, despite its specific mention, the *Panhandle-Indiana Case.* Does the holding in *Panhandle-Indiana,* as indicated by Mr. Chief Justice Boyles, support defendant's contention that it may require plaintiff to obtain from it a certificate of public convenience and necessity as a prerequisite to making, within this State, the sales in interstate commerce here involved and, accordingly, order plaintiff to cease and desist from making those sales until such certificate has been obtained? I think not. On the contrary, the opinion in that case, as quoted at length in Mr. Chief Justice Boyles' opinion in this case, makes it clear that decision therein is confined to the following: First, that the sales are in interstate commerce; second, that, as such, they are subject to State regulation as to *rates and service,* both under previous decisions of the court and by virtue of the provisions of the Federal natural gas act; third, that the orders of the Indiana commission requiring plaintiff to file tariffs, rules and regulations, annual reports, et cetera, are valid and permissible initial steps in the State's application of its regulatory plan to plaintiff. Nowhere in the opinion is it suggested that the Indiana commission sought to require, or that the court was upholding the right of the commission to require, plaintiff to obtain a certificate of public convenience and necessity before making, in Indiana, the sales in interstate commerce there involved. Rather, in holding the State of Indiana clothed with regulatory power as to *rates and service,* the court, significantly, said (pp 522, 523):

"State power to regulate interstate commerce, wherever it exists, is not the power to destroy it, unless Congress has expressly so provided."

Defendant points to no such express congressional provision either in the Federal natural gas act or elsewhere.

Defendant cites *Clark* v. *Poor,* 274 US 554 (47 S Ct 702, 71 L ed 1199), in which the court held constitutional a State regulation providing that before operating over State highways a common carrier by motor shall apply for and obtain a certificate or permit therefor from a State commission and pay an extra tax for maintenance of highways and administration of laws governing their use even though applied to carriers engaged exclusively in interstate commerce. That it is not authority for defendant's position here clearly appears from the statement in the opinion therein that while the State act called the required certificate a certificate of public convenience and necessity, the State commission had recognized that under *Buck* v. *Kuykendall,* 267 US 307 (45 S Ct 324, 69 L ed 623, 38 ALR 286), and *Bush & Sons* v. *Maloy,* 267 US 317 (45 S Ct 326, 69 L ed 627), it had no discretionary power to grant or withhold a certificate on the grounds of public convenience and necessity or lack thereof as relates to carriers engaged exclusively in interstate commerce and that the commission was, therefore, willing to grant the certificate upon application and compliance with other provisions of the law. No such situation confronts us here. As stated in Mr. Chief Justice Boyles' opinion, the commission's order in the case at bar "is, however, a direct order by the Michigan public service commission, finding that it does have jurisdiction to determine whether a certificate of public convenience and necessity shall be granted to Panhandle. * * * It denies the right of Panhandle to sell natural gas to * * * local consumers for their own consumption, without first obtaining a certificate of public convenience and necessity from the commission. It leaves the door

open for a hearing before the Michigan public service commission as to whether or not public convenience and necessity requires the granting of such a certificate to Panhandle. * * * The statute states what the commission shall take into consideration in determining the question of public convenience and necessity * * * CL 1948, § 460.505 (Stat Ann § 22.145)." The cited statute requires the commission, in determining the question of public convenience and necessity to "take into consideration the service being rendered by the utility then serving such territory, the investment in such utility, the benefit, if any, to the public in the matter of rates and such other matters as shall be proper and equitable in determining whether or not public convenience and necessity requires the applying utility to serve the territory." It is the plain intent of the act, from which alone the commission derives its power to grant certificates of public convenience and necessity, that the commission shall not issue such certificate unless and until it shall have determined, upon the basis of the considerations mentioned in the statute, that public convenience and necessity requires the applying utility to serve the territory. It is, therefore, the clear legal import of the commission order, here involved, that plaintiff shall not make the sales in question unless and until the commission shall have determined that public convenience and necessity requires such sales and, axiomatically, that plaintiff shall never make such sales so long as the commission remains unpersuaded, in view of existing facilities, that public convenience and necessity do require such sales by plaintiff. So understood, this becomes, then, a plain case of the commission asserting the power to prohibit these sales in interstate commerce if they compete with the sales and business of local utilities. It is no mere coincidence that defendant's cease and

desist order, by its own terms, expressly limits its restraint upon plaintiff to operations in municipalities already being served by some other public utility.    The extent to which prevention of competition with a local utility was the motivating consideration may be gathered from the pleadings and from exhibits in the case, particularly telegrams from defendant and intervenor to the Federal power commission protesting plaintiff's invasion of intervenor's "distribution area."    Prevention of competition with local commerce by interstate commerce is an objective, in and of itself, not permitted under the "commerce clause" to be accomplished by a State.    *H. P. Hood & Sons* v. *DuMond,* 336 US 525 (69 S Ct 657, 93 L ed 865); *Buck* v. *Kuykendall, supra; Bush & Sons* v. *Maloy, supra; Baldwin* v. *Seelig,* 294 US 511 (55 S Ct 497, 79 L ed 1032, 101 ALR 55).    While a State may regulate the transportation and sale of natural gas in interstate commerce within its boundaries, it may not prohibit it.    *West* v. *Kansas Natural Gas Co.,* 221 US 229 (31 S Ct 564, 55 L ed 716, 35 LRA NS 1193).    A State cannot make the right to transport or sell, within its territorial limits, goods in interstate commerce dependent upon satisfying a State authority that public convenience and necessity requires such operation and upon thus securing a certificate of public convenience and necessity from the State. Statutes so providing are, in that respect, unconstitutional.    Determination of the adequacy of existing facilities as affecting the right to sell in interstate commerce is distinctly a Federal and not a State function.    *Buck* v. *Kuykendall, supra; Bush & Sons* v. *Maloy, supra.*    We are not impressed by defendant's suggestion that the latter 2 cases are overruled by *Clark* v. *Poor, supra,* inasmuch as the court there upheld State regulatory action only as it was predicated upon State recogni-

tion of the force and applicability thereto of the *Buck* and *Bush Cases*.

Defendant stresses a difference between the case at bar and the *Buck* and *Bush Cases* in that in the latter cases a certificate had been applied for and refused, while here plaintiff has made no such application. The difference is of no legal significance in this connection. In testing the validity of the commission order a consideration of what the commission might do with an application of plaintiff for a certificate is of no consequence. The question is not whether the commission would exercise its powers properly, but, rather, what are the commission's powers? Under the commission's order plaintiff is prohibited from selling natural gas in Michigan to local consumers in interstate commerce until plaintiff secures a certificate of public convenience and necessity from defendant. Under the applicable Michigan statute the power of defendant to issue such certificate is conditioned upon a determination that public convenience and necessity so require. Inherent in the claimed discretionary power to grant is the power to deny the certificate. *City of Sault Ste. Marie* v. *International Transit Co.*, 234 US 333 (34 S Ct 826, 58 L ed 1337, 52 LRA NS 574). Do the provisions of the "commerce clause" permit the State commission to prohibit plaintiff from making sales in interstate commerce merely because the sales are not required by public convenience and necessity? The answer of the *Buck* and *Bush Cases* is "no." The subsequently enacted Federal natural gas act has conferred no such powers upon the States. It is this lack of power in a State to condition the right to engage in interstate commerce therein upon its view of the requirements of public convenience and necessity which distinguishes this case from such cases as *Highland Farms Dairy* v. *Agnew*, 300 US 608 (57 S Ct 549, 81 L ed 835), cited by defend-

ant, in which the State undertook no more than to license and subject certain intrastate commerce to what the court had theretofore held to be permissible regulatory provisions, the court saying, appropriately enough, that one may not be heard to complain in advance of his application for a license that there is danger of refusal. The inapplicability of that language to a case such as this, in which the State seeks to assert a power which it does not possess, is obvious.

The decree of the trial court reversed the commission order and permanently restrained defendant from interfering with the sales in question. From its opinion it appears that the trial court did not thereby intend to prevent lawful regulation of such sales by defendant, but merely to prevent the interference implicit in the commission's order reversed by the court. So construed, the decree should be affirmed, without costs, a public question being involved.

Reid and Carr, JJ., concurred with Dethmers, J.