THE CITY OF LA HARPE *et al.* v. THE ELM TOWNSHIP GAS, LIGHT, FUEL AND POWER COMPANY.

No. 13,572.   (76 Pac. 448.)

SYLLABUS BY THE COURT.

1. MINES AND MINING—*Natural Gas—Public Business.* The production and distribution of natural gas for light, fuel and power is a business of a public nature, the control of which belongs to the state.

2. HIGHWAYS—*Supreme Control by Legislature.* In the control of streets, alleys and other highways the power of the legislature is supreme and unlimited, except so far as it may be restricted by constitutional provisions.

3. MINES AND MINING—*Natural Gas—Right of Eminent Domain.* It is competent for the legislature to provide for the laying of pipes and mains in streets, alleys and public grounds in order to distribute natural gas and transport it to consumers, and for this purpose there may be an appropriation of private property under the sovereign power of eminent domain.

4. CORPORATIONS—*Titles of Acts Not Too Narrow.* The act entitled "An act concerning private corporations" (Gen. Stat. 1868, ch. 23; Gen. Stat. 1901, § 1245 *et seq.*) and the acts amendatory of section 88 of that chapter, including chapter 128 of the Laws of 1901, are not invalid because of the narrowness of their titles.

5. —————— *Natural Gas in Cities— Consent of Municipal Authorities Unnecessary.* Corporations organized for the production and distribution of natural gas may avail themselves of the privilege given by section 1366, General Statutes of 1901, of laying gas-pipes through any street, alley or public ground of any city of the second or third class, without obtaining the consent of the municipal authorities thereof.

7—69 KAN.

6. MINES AND MINING— *Gas-pipes in Streets—Provision for Compensation Unnecessary.* The statute granting to gas companies the privilege of laying pipes in the streets, alleys and public grounds of a city is not rendered invalid by reason of the fact that no provision is made for the payment of compensation to the city.

7. ——— *Injunction the Proper Remedy for Interference.* Injunction is a proper remedy to prevent interference and obstruction in the exercise of the statutory privilege of laying gas-pipes, although such interference and distribution, to some extent, consists of arrests and criminal proceedings.

Error from Allen district court; L. STILLWELL, judge. Opinion filed April 9, 1904. Affirmed.

*J. Q. Roberts, W. P. Dillard,* and *W. W. Padgett,* for plaintiffs in error.

*Oscar Foust & Son,* and *Baxter D. McClain,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: La Harpe is a city of the third class. On June 25, 1901, the mayor and council of the city granted to C. L. Evans, his successors and assigns, the right to use the streets, alleys and public grounds for the erection and operation of machinery for drilling for oil, gas, or water, and to lay and maintain necessary pipes and appliances to convey oil, gas or water to manufacturing plants within a radius of one and one-half miles of the city hall. Evans drilled a well in the city and obtained a large flow of gas, and in January, 1902, sold and transferred his interest in both the well and franchise to A. B. Cockrell, who, in May, 1902, sold and transferred his interest to the Elm Township Gas, Light, Fuel and Power Company. In August, 1902, the gas company initiated proceedings to condemn a right of way for a pipe-line from its well in La Harpe to manufacturing plants and to a plant in the city of Gas, which is two and one-half

miles away. Commissioners were appointed and condemnation was made and completed October 20, 1902, substantially in the manner that is provided for in the condemnation of a right of way for a railroad. No compensation was awarded for the right to use the streets and alleys of La Harpe, but satisfactory arrangements as to compensation appear to have been made with owners of private property over which it was proposed to lay the pipe-line.

On November 17, 1902, the gas company undertook to excavate for the laying of pipes in an alley of the city, but the city officers caused the arrest of the men engaged in the work, and by threats of violence prevented its continuation. The gas company then prepared a notice and served it on the officers of the city, setting forth its purposes with respect to the laying of pipes, its claimed rights under the law, the previous interference with the work, that it was about to resume operations on the pipe-line, and warning them not to interrupt the work again, nor to molest the men who would be engaged in it. Later, and on November 24, 1902, efforts were made by the gas company to excavate and lay the pipes, but the officers of the city, claiming that the company had no right to lay pipes in the streets, alleys or public grounds of the city, again interfered and stopped the work. It appears that ordinances were passed purporting to repeal the franchise granted to Evans; also, providing that no one should lay pipes in the streets or alleys for the purpose of conducting oil, gas or water until a franchise had been obtained from the city, and finally declaring that it was unlawful and a misdemeanor so to excavate without obtaining a right from the city. When the gas company was thwarted in the second effort, this proceeding was brought to

enjoin the officers and agents of the city from preventing or interfering with the operations of the company in laying the pipes. The gas company claimed a right to use the streets, alleys and public grounds of the city for piping gas, first, under the ordinance of the city previously passed, granting Evans, his successors and assigns, the privilege, and, second, under the statutes and the condemnation proceedings had under them. The trial court sustained the second claim of the gas company and awarded an injunction against the city and its officers.

Since the trial court did not base the injunction allowed on the franchise originally granted by the city to Evans, which was set up in the first count of the petition, no further attention need be given to that feature of the case. The questions for consideration are: (1) Do the statutes confer upon corporations like the gas company authority to lay pipes in the streets, alleys and public grounds of a city for the purpose of conducting gas to consumers? (2) Did the gas company conform to the statutory requirements? The production and distribution of natural gas for light, fuel and power affect the people generally to such an extent that the business may be regarded as one of a public nature, and is almost, if not quite, a public necessity, the control of which belongs to the state. It was therefore competent for the legislature to provide for the laying of pipes and mains in streets and other highways in order to transport gas to consumers, and for such purpose there may be an appropriation of private property under the sovereign power of eminent domain. (10 A. & E. Encycl. of L., 2d ed., 1085, and cases cited; 14 id. 916.) The legislature has provided for the appropriation of land for the purpose named; and in the same act conferred upon

corporations organized for such purpose the privilege of laying pipes through any street, alley or public ground of any city of the second or third class. (Gen. Stat. 1901, § 1366.)

The city attacks the validity of the act conferring the power because it contains subjects not embraced or properly expressed in its title. The title of the act as originally passed was "An act concerning private corporations," and was intended to comprise within a single chapter the entire body of the statute laws concerning private corporations. (Gen. Stat. 1868, ch. 23 ; Gen. Stat. 1901, § 1245 *et seq.*) In section 88 of that act it was provided that lands might be appropriated for the use of macadam, plank-road and telegraph corporations in the manner provided for railroad corporations, so far as the same was applicable. Later, this section was so amended as to include hydraulic corporations. (Laws 1871, ch. 64.) In 1876 it was again amended by including irrigating corporations and making provision for conducting water and the transmitting of water-power. Authority was there given to lay pipes and other appliances through any street, alley or public ground of any city of the second or third class, with the provision "that no such canal shall be located through any street or alley or public ground of any city without the consent of the municipal authorities thereof." (Laws 1876, ch. 58.) The legislature of 1891 extended like authority to milling and other manufacturing corporations, and made additional provisions with reference to conducting water, electricity, compressed air, and the transmission of power generated by the corporations, but retained the features with reference to the occupation of streets, alleys and public grounds, and also the requirement of consent of

the municipal authorities to the location of a canal or raceway through any street or alley. (Laws 1891, ch. 85.) In 1899 the section was again so amended as to include corporations organized for the piping of gas, likewise authorizing the laying of pipes through the streets, alleys or public grounds of a city of the second or third class, but prohibiting any corporation from piping or carrying natural gas beyond the limits of the state. (Laws 1899, ch. 95.) In 1901 the provision was again so amended as to include hospital corporations, but preserving the general features of the section. (Laws 1901, ch. 128; Gen. Stat. 1901, § 1366.)

The title to the original act is general, and is sufficiently broad to cover provisions as to the powers of private corporations and the manner in which these powers may be exercised. Although the act embraces a great variety of matters, all of them are germane to the subject of private corporations; and this title has been approved in *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.*, 26 Kan. 181. Each of the amendatory acts referred to is entitled as amendatory of the preceding one, and introduces no subject that is not germane to the title of the first act. None of the acts can be held invalid because of the insufficiency of its title.

In this statute the privilege of laying gas-pipes in the streets, alleys and public grounds of cities of the second and third class is directly conferred on corporations organized to produce and distribute gas. The power to confer the privilege and to prescribe the conditions upon which it may be exercised is not delegated to the city, nor is its consent required. In the section questioned, the legislature, after providing for the condemnation of a right of way for canals, race-ways, and pipes, as well as shafting, belting, pulleys, and wires,

through streets, alleys and public grounds of cities, added "that no such canal or race-way shall be located through any street or alley or any public ground of any city without the consent of the municipal authorities thereof." (Gen. Stat. 1901, § 1366.)   In effect, this was a declaration that the consent of the city was not necessary to the exercise of any of the other uses mentioned.   Having the question of municipal consent under consideration in the conduct of water by canals and raceways, of gas and air by pipes, of electricity by wires, and the transmission of power by shafting, belting and ropes through the streets, alleys, and public grounds, it made the consent of the municipality essential only as to the conduct of water in canals and raceways, and by the clearest inference indicated that such consent should not be necessary in any other case.

It is argued with much force that the interests and safety of the public would be better subserved if excavations could not be made, and pipes could not be laid, in the streets of a city except with the consent and under the supervision of municipal officers.   If we were acting in a legislative capacity we might readily agree with this claim, but that is a matter for the determination of the legislature alone, which, as has been said, is the "master of its own discretion." In the control of the streets and highways the power of the legislature is supreme and unlimited, except so far as it may be restricted by constitutional provisions.   The general statutes relating to the government of cities generally place the power to lay out and improve streets and public grounds, and to regulate their use, in municipal officers, but that is a power which the state may exercise either directly or through one of its agencies.   In placing the control of streets

and public grounds in cities, the legislature surrendered none of its own power, nor did it vest any rights in such cities as against the public. A city is a creation of the legislature — a subordinate agency of the state, which exercises only such power as the legislature confers, and for such period of time as the legislature in its discretion determines. The state gives, and the state can take away; and the legislature is at liberty to resume so much of the control of the streets and alleys and public grounds formerly exercised by the city as it deems best, and this without obtaining the consent of either the officers or the inhabitants of the city. (Ell. Roads & St., 2d ed., § 421.)

The permission of the city of La Harpe was, therefore, not necessary to the privilege of laying gas-pipes through the streets and alleys, nor could it impose any conditions upon a corporation availing itself of the statutory right. The occupancy of the streets, however, is not wholly unrestricted. The privilege must be exercised with a care for the safety and convenience of the public, and the pipes laid in such a way as to do as little damage as possible, and impair as little as possible the use of the streets and alleys while the work is in progress; and when the pipes are laid the streets and alleys should be restored to their former condition. While the city cannot confer or withhold the privilege, it may be that reasonable regulations may be prescribed by ordinance looking to the safety of travelers and the protection of the public while the work is in progress. Then, again, if the privilege be abused and the rights of either public or private parties trenched upon, a resort may be had to the supervisory power which courts can exercise for the protection of either public or private interests. If municipal consent be so essential to

La Harpe v. Gas Co.

the public welfare as is contended by counsel for plaintiff in error, an appeal may be had to the legislature, which has ample authority to place upon the exercise of the privilege conditions other than those which now exist.

There appears to have been substantial compliance with the statutory requirements.   Attention is called to the fact that no compensation was awarded for the right to use the streets and alleys, but this does not affect the validity of the statute.   The fee of the streets and alleys is in the public, and the legislature, which represents the public, and has unlimited control of the streets and alleys, may grant a privilege or franchise in them without providing for the payment of compensation.   (*O. O. C. & C. G. Rld. Co: v. Larson*, 40 Kan. 301, 19 Pac. 661, 2 L. R. A. 59; 10 A. & E. Encycl. of L., 2d ed., 1133.)

Injunction was a proper remedy to prevent the defendants from interfering with, and hindering, the company in its work.   The city assumed that the company had no right except such as it might grant, and the interference and arrests that were made were for the purpose of preventing the exercise of a privilege which the statute conferred.   The fact that the interference and obstruction to some extent took the form of criminal arrests and proceedings could not deprive a court of equity of the right to exercise its jurisdiction to protect property and property rights. (*The City of Atlanta et al. v. The Gate City Gas Light Co.*, 71 Ga. 106.)

The judgment of the district court will be affirmed.

All the Justices concurring.