No. 48,397

CITIES SERVICE GAS COMPANY, a Corporation, *Appellant,* v. THE STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, G. T. VAN BEBBER, As Chairman, R. C. LOUX and WILLIAM C. GRAY, As Members of Said Commission, and Their Respective Successors in Office, *Appellees.*

(567 P.2d 1343)

Opinion filed July 11, 1977.

*Daniel R. Hopkins,* of Oklahoma City, and *Mark H. Adams,* of Adams, Jones, Robinson, and Malone, Chartered, of Wichita, argued the cause, and were on the brief for the appellant.

*R. Edward Brausa,* special counsel, of Glaves, Weil, and Evans, of Wichita, and *Charles H. Apt,* city attorney, of Iola, argued the cause, and *W. Robert Alderson,* general counsel, of State Corporation Commission, was with them on the briefs for the appellees.

The opinion of the court was delivered by

PRAGER, J.: The issue to be determined in this case is whether the direct sale of natural gas to five Kansas municipalities by the Cities Service Gas Company, an interstate pipeline company, is within the jurisdiction of the Kansas State Corporation Commission.

Cities Service is an interstate natural gas company as defined by and subject to the provisions of the Natural Gas Act, 15 U.S.C.A. § 717. It purchases gas from producers and other interstate natural gas pipeline companies in the states of Texas, Oklahoma, Kansas, and Missouri, and transports such gas through an integrated interstate network of pipelines to and through all of such states and to the state of Nebraska, where such gas is sold to distributors for distribution and public consumption. These sales are commonly called "sales for resale" and are made by Cities Service under Federal Power Commission tariffs to each of the municipalities, which in turn distribute and sell such gas to the residents of such municipalities. These sales for resale are not the subject of these proceedings. In addition to sales for resale, Cities Service sells natural gas for direct consumption to selected customers located on or near its pipelines in all of these states. Among its direct sales customers in Kansas are the cities of Iola, Chanute, Garnett, Neodesha, and Osage City. Such direct sale gas is used by the municipalities for the generation of electricity in the electric power plants owned and operated by the municipalities. It is these sales over which the commission seeks to assert jurisdiction.

It is undisputed that the direct sales made by Cities Service in the state of Kansas are of substantial volume. None of these direct sales are at the present time regulated as to the rates charged by either the Federal Power Commission or the Kansas corporation commission. The record discloses that in 1972 Cities Service had total system sales of $167,106,420 of which sales in Kansas amounted to $95,008,922. Approximately fifty-six (56) percent of Cities Service's total business is conducted within the state of Kansas and slightly less than one-half of the total business in Kansas was derived from the unregulated direct sales. Cities Service has 5,329 miles of pipeline of which approximately 3,000 miles exist in the state of Kansas. In 1972 of its total customers in Kansas there were 1,068 direct sales customers as compared with 471 sales for resale customers. Over sixty-two (62) percent of the total value of Cities Service's property, plant, and facilities is located in the state of Kansas. It is obvious from these statistics that we are dealing with hundreds of sales representing millions of dollars of unregulated direct sales in Kansas. The five municipalities involved in this case purchase gas by direct sales to serve about 26,000 of their citizens.

In July 1972, the five municipalities filed a complaint with the Kansas corporation commission requesting the commission to accept jurisdiction over direct sales of gas made by Cities Service to the municipalities. After denial of Cities Service's motion to dismiss, an evidentiary hearing was held before the commission. On June 18, 1974, the commission determined that the direct sale of such gas to the municipalities constituted a public utility function as defined by K.S.A. 66-104 and ordered Cities Service to apply to the commission for a certificate of public convenience and necessity for such sales and to file with the commission for approval its tariff for such sales or the contracts under which such sales were made. Cities Service filed its application for rehearing. In response thereto the commission adhered to its original rulings but modified certain of its findings of fact and conclusions of law. As modified on rehearing the pertinent findings and conclusions were as follows:

### FINDINGS OF FACT

The commission finds:

1. That the matter has come before the state corporation commission of the state of Kansas pursuant to a complaint filed by the cities of Iola, Chanute, Garnett, Neodesha, and Osage City, Kansas, against Cities Service Gas Company (Cities Service) alleging, among other things, that the commission should regulate the rates at which Cities Service sells gas on a direct sales basis to the complainants.

. . . . . . . . . . . . . . .

5. That complainants in this matter are five Kansas communities having an aggregate population of 26,000 or more; that all of said complainants purchase natural gas from Cities Service, the respondent herein, via direct sales.

6. That complainants are buying natural gas from Cities Service on a "take-it-or-leave-it" basis; that complainants are buying the gas as Cities Service dictates; that Cities Service makes, amends, and cancels contracts as they desire with complainants having no say as to terms or price.

7. That Cities Service is the only supplier of natural gas in the area; that although there is a distributor certificated in the area (Gas Service Company), such distributor cannot get gas to service complainants; that the distributor certificated in the area is supplied gas by Cities Service.

8. That gas wholesaled by Cities Service to Gas Service Company is being sold by Gas Service Company to customers similar to complainants for like uses at prices less than what complainants are being required by Cities Service to pay via direct sales.

9. That complainant's average price per Mcf is higher than the average for all direct sales; that Cities Service's own evidence reflects this has been true for the last ten years.

10. That the possibility of complainants using other fuels is nil, so there are no effective competitive forces in the market place that would tend to help ameliorate the cost of gas sold via direct sales.

11. That complainants have no recourse against Cities Service through the Federal Power Commission should they wish to challenge prices above the minimum price approved by Federal Power Commission of the contracts involved; that the evidence shows that no governmental body, federal or state, is currently regulating the rates at which Cities Service makes direct sales of natural gas in Kansas other than minimum prices set by the Federal Power Commission.

12. That there were no indicated instances where the Federal Power Commission has intervened to review the contracts at which Cities Service sold natural gas via direct sales or involved itself with the rates on direct sales.

13. That Cities Service is a corporation that owns, controls, operates, and manages equipment, plant, and generating machinery for the conveyance of gas through pipelines existing in Kansas for the purpose of conveying gas in and through parts of Kansas; that Cities Service does operate pipelines (approximately 3,008 miles) in the state of Kansas for the general commercial supply of gas for heat and energy; that Cities Service property, plant, and facilities include numerous gas storage fields, compressor stations, gathering and transmission lines, and supplies of gas in Kansas.

14. That Cities Service obtains greater than one half of its total revenues from business transacted in Kansas; that approximately one half of the Kansas revenues are attributable to direct sales of natural gas; that the rates on all direct sales in Kansas, industrial, residential and commercial, are unregulated except for the approval of the minimum price by the Federal Power Commission;

that these direct sales by Cities Service encompass a great variety of Kansas citizens, businesses, and organizations including but not limited to churches, schools, residences, farms, and military installations.

15. That Cities Service has exercised its rights of eminent domain to build pipelines in Kansas for the general commercial supply of gas to be sold as energy for heat and other purposes in Kansas and elsewhere; that such right is granted to Cities Service pursuant to K.S.A. 17-618 which stems from Cities Service being an interstate pipeline facility for the purposes of serving the public generally in Kansas and elsewhere. That Cities Service delivers more than 540 million Mcf of gas per year, more than half of which is sold in Kansas.

## CONCLUSIONS OF LAW

The commission concludes:

1. That the state corporation commission of the state of Kansas, pursuant to K.S.A. 66-101, has the power, authority, and jurisdiction to supervise and regulate public utilities and common carriers doing business in Kansas.

2. That K.S.A. 66-104 defines the term "public utility" among other things, as "every corporation, . . . that now or hereafter may own, control, operate or manage . . . any equipment [or] plant . . . for the conveyance of oil and gas through pipelines in or through any part of the state, except pipelines less than fifteen (15) miles in length and not operated in connection with or for the general commercial supply of gas or oil . . ."

3. The commission in its original order stated that K.S.A. 66-105 defines the term "common carriers" to include pipeline companies. On rehearing the commission deleted conclusion of law No. 3, thus eliminating any reference to a pipeline company as a common carrier as a basis for the commission's taking jurisdiction over Cities Service in this proceeding.

4. That Cities Service has on at least one occasion claimed the status of public utility in order to afford itself eminent domain rights under K.S.A. 17-618.

5. That Cities Service cannot now be heard to disclaim public utility status when it has previously elected to utilize said status.

6. Cities Service is a public utility as defined by K.S.A. 66-104 and that the state corporation commission of the state of Kansas

has the power, authority, and jurisdiction to supervise and regulate the rates charged by Cities Service above the minimum set by the Federal Power Commission for direct sales of natural gas in Kansas. (The reference to Cities Service as a common carrier in the original finding was deleted.)

7. That K.S.A. 66-101 is not mandatory in its language. The absence of regulatory acts affecting Cities Service in the past does not preclude the commission from now acting upon its authority. The fact that the commission has not previously regulated a particular aspect of its jurisdiction does not negate the present exercise of that jurisdiction.

8. That Cities Service is an interstate pipeline company operating its property to sell natural gas to the citizens of Kansas and also in other states both through sales for resale and direct sales.

9. That Cities Service's business of selling gas via direct sales to schools, churches, cities, military installations and others, is a business affected with a high degree of public interest.

10. That the Kansas Corporation Commission has the duty to protect the final or ultimate natural gas customer regardless of the status of the seller of such gas.

11. That the nature of Cities Service's business, the manner in which it conducts the same, the limited competition, and its control over the supply of gas, has clearly demonstrated a need for regulation of the rates charged for the direct sale of natural gas to the complainants.

12. That the regulation of the rates on direct sales to complainants is necessary to conserve and insure the best use of natural resources and to protect the public interest generally.

13. That the Natural Gas Act of 1938, 15 U.S.C.A. § 717 *et seq.,* exempts direct sales of natural gas from the jurisdiction of the Federal Power Commission as to rates except as to the approval of a minimum rate under the Federal Power Commission's certification responsibility.

14. That the Natural Gas Act reserves to the states the regulation of rates for direct sales of natural gas.

15. That the exercise of this commission's rate regulation function as to the determination of rates for direct sales, above the minimum rate set by the Federal Power Commission, does not conflict or infringe upon the jurisdiction preempted by the Fed-

eral Power Commission. Further, that there is no potential for conflict in jurisdiction between the Federal Power Commission and the Kansas Corporation Commission.

16. That existing regulation by the Federal Power Commission is not such that it will make ineffective this commission's regulation of the rates on direct sales of natural gas.

17. That the Supremacy and Commerce Clauses of the United States Constitution do not prohibit the states from regulating the rates on direct sales of natural gas, nor do such clauses in any way conflict or inhibit such state regulation.

18. That the Constitution of the state of Kansas neither prohibits nor inhibits the regulation of rates on direct sales of natural gas by the state corporation commission of the state of Kansas.

On the basis of its findings of fact and conclusions of law as modified, the commission entered the following orders:

IT IS THEREFORE BY THE COMMISSION ORDERED:

That Cities Service make application to the state corporation commission of the state of Kansas for a certificate of public convenience and necessity. This order is not to be construed so as to infringe or conflict with any federal authority but is only to apply to the rates charged by Cities Service above the commensurate and similar minimum rates set by the Federal Power Commission that would otherwise be applicable to the direct sale of natural gas to the cities of Iola, Chanute, Garnett, Neodesha, and Osage City, Kansas.

IT IS FURTHER ORDERED: That Cities Service file with the state corporation commission of the state of Kansas rate tariffs for charges made for the direct sale of natural gas to the cities of Iola, Chanute, Garnett, Neodesha, and Osage City, Kansas, or in the alternative, file copies of the contracts under which the direct sale of natural gas is being made to said cities for said commission's approval within thirty (30) days from this order's official mailing date.

The commission retains jurisdiction of the subject matter hereof, and of the parties hereto, for the purpose of issuing from time to time such other orders as may be necessary and proper.

Cities Service then filed a timely application for judicial review pursuant to K.S.A. 66-118c. After a hearing the district court of Osage county entered judgment finding that it had jurisdiction of

the subject matter and the parties and adopting the findings of fact made by the commission as modified on rehearing. In addition, the district court found Cities Service to be a public utility within the meaning of K.S.A. 1974 Supp. 66-104; that direct sales of gas by Cities Service within the state constituted a business affected with the public interest; and that the exercise of jurisdiction by the commission did not violate the doctrine of federal preemption or impose an undue burden on interstate commerce in violation of the United States Constitution. It further found specifically that the orders of the commission asserting jurisdiction over the rates charged on direct sales of natural gas within the state of Kansas by Cities Service were lawful and reasonable. Cities Service then appealed to this court.

As one of its points on the appeal Cities Service maintains that the commission's findings of fact and conclusions of law as affirmed by the district court are irrelevant and immaterial to the issue in this proceeding and are not supported by substantial competent evidence. From the entire record before us we have concluded that the findings of fact of the commission and the district court are supported by substantial competent evidence. The issues left to be determined are clear-cut questions of law and as presented resolve themselves into two basic questions: (1) Does regulation by the commission of the direct sales of natural gas involved here constitute an undue burden on interstate commerce and conflict with the exclusive jurisdiction of the Federal Power Commission under the Natural Gas Act, 15 U.S.C.A. § 717, *et seq.?* and (2) Are direct sales of natural gas made by an interstate natural gas pipeline company to five Kansas municipalities, for electric generation purposes, public utility sales within the provisions of K.S.A. 66-101, *et seq.?*

DOES REGULATION BY THE COMMISSION OF THE DIRECT SALES OF NATURAL GAS INVOLVED HERE CONSTITUTE AN UNDUE BURDEN ON INTERSTATE COMMERCE AND CONFLICT WITH THE JURISDICTION OF THE FEDERAL POWER COMMISSION UNDER THE NATURAL GAS ACT?

The first issue presented may be disposed of summarily and without extensive comment. In view of the more recent decisions of the Supreme Court of the United States we believe that there can be no doubt that a state regulatory commission may consti-

tutionally regulate the rates to be charged on direct sales by a natural gas pipeline company to its individual customers within the state. The exact issue presented here was fully considered and determined by the United States Supreme Court in *Panhandle Pipe Line Co. v. Comm'n,* (Ind.) 332 U.S. 507, 92 L.Ed. 128, 68 S.Ct. 190; *Panhandle Co. v. Michigan Comm'n,* 341 U.S. 329, 95 L.Ed. 993, 71 S.Ct. 777; and more recently in *FPC v. Louisiana Power & Light Co.,* 406 U.S. 621, 32 L.Ed.2d 369, 92 S.Ct. 1827. In that series of cases the Supreme Court made it crystal clear that the Natural Gas Act of 1938 specifically exempts from regulation by the Federal Power Commission the rates to be charged on direct sales of gas by an interstate pipeline to its customers and reserved to the states the regulation of direct sales. Under § 1 (b) of the Natural Gas Act (15 U.S.C.A. § 717[b]) Congress drew within its own regulatory power, delegated by the act to its agent the Federal Power Commission, *only* three things: (1) the transportation of natural gas in interstate commerce; (2) its sale in interstate commerce for *resale;* and (3) natural gas companies engaged in such transportation or sale . . . each being an independent grant of jurisdiction. We find the contention of Cities Service that the Kansas state corporation commission as a state regulatory agency may not constitutionally regulate the rates charged on direct sales of gas by Cities Service in this state to be contrary to existing law. Before leaving this point it is important to emphasize that the Kansas corporation commission in its order recognized the limitations on its power to regulate natural gas companies. In requiring Cities Service to make application for a certificate of public convenience and necessity, the commission states unequivocally that its order is not to be construed so as to infringe or conflict with any federal authority but is only to apply to the rates charged by Cities Service above the minimum rates set by the Federal Power Commission that would otherwise be applicable to the direct sale of natural gas to the five municipalities. The order is further made more specific by requiring Cities Service to file with the commission rate tariffs for charges to be made for the direct sale of gas, or in the alternative, to file copies of the contracts under which the direct sale of natural gas is then being made to the municipalities so as to obtain the commission's approval. We have no reason to apprehend that the commission intends to invade the exclusive jurisdiction of the Federal Power Commission.

ARE THE DIRECT SALES OF NATURAL GAS BY CITIES
SERVICE TO THE FIVE KANSAS MUNICIPALITIES, FOR
ELECTRIC GENERATION PURPOSES, PUBLIC UTILITIES
SALES WITHIN THE CONTEMPLATION OF K.S.A. 66-101,
*et seq.?*

We must determine whether Cities Service is a "public utility",
within the meaning of the Kansas statutes, in order to give to the
Kansas corporation commission jurisdiction to regulate its direct
sales of natural gas in this state. On this issue it would be helpful
to summarize the basic contentions of the parties. The Kansas
municipalities maintain that as direct sales purchasers or users of
natural gas from Cities Service, they have been forced to accept
Cities Service's terms without negotiation because there is no
other available supply of gas; that the rate charged is left solely to
the discretion of Cities Service without any regulatory control by
any federal or state regulatory commission; and that because
there is no other source of supply of gas, Cities Service operates a
monopoly as to the rates charged. They further contend that the
direct sale of natural gas by Cities Service is affected with a
public concern, welfare, and interest; that the direct sale of
natural gas made by an interstate gas company from its facilities
located in Kansas to Kansas customers is a public utility function
as defined by K.S.A. 66-104 and therefore the state corporation
commission has jurisdiction of the same.

Cities Service takes the position that it is engaged in buying,
selling, and transporting gas in interstate commerce and since it
does not hold itself out *as serving the public generally* it is not a
public utility. It further contends that the commission has juris-
diction only over intrastate commerce and that some of the
statutory duties imposed on the commission in its regulation of
public utilities will result in a usurpation of the exclusive juris-
diction of the Federal Power Commission. It further relies on the
fact that the Kansas public utilities statute was enacted in 1911,
has since been amended five times, and that past legislative and
administrative interpretations of the statute must lead to the
conclusion that the commission has no jurisdiction over direct
sale of gas by Cities Service.

The issue presented is one that has resulted in conflicting
decisions in other jurisdictions. The courts of several states have

interpreted their particular state statute to bring certain interstate gas companies within the definition of a public utility so as to vest jurisdiction in its state regulatory commission to control the rates charged on direct sales within the state. *(Gas Co. v. Pub. Util. Comm.,* 135 Ohio St. 408, 21 N.E.2d 166 [1939]; *Public Serv. Comm. v. Panhandle East. Pipeline Co.,* 224 Ind. 662, 71 N.E.2d 117 [1947]; *Panhandle v. Public Service Comm.,* 328 Mich. 650, 44 N.W.2d 324 [1950].) In each of these cases the statute defined a public utility in broad language, which was construed to include the particular interstate gas pipeline company involved. Other state appellate courts have interpreted their public utilities statutes so as to exclude the jurisdiction of their state regulatory commissions over certain interstate gas pipeline companies. Examples are *United Gas Co. v. Miss. Pub. Ser. Comm.,* 241 Miss. 762, 133 So.2d 521 [1961]; *Miss. River Fuel Corp. v. Commerce Com.,* 1 Ill.2d 509, 116 N.E.2d 394 [1953]; *P.U.C. v. Colorado Co.,* 142 Colo. 361, 351 P.2d 241 [1960].) Most of these cases were split decisions with dissenting opinions and involved state statutes defining a "public utility" in a more restrictive way. In each jurisdiction the state appellate court was required to construe its own state statute defining a "public utility" to determine the jurisdiction of its state regulatory commission.

To resolve the issue in this case it is necessary that we consider carefully the language of the applicable Kansas statutes in order to determine whether an interstate gas pipeline company falls within the statutory definition of a "public utility." The applicable Kansas statutes in pertinent part provide as follows:

K.S.A. 66-101: "**Power, authority and jurisdiction.** The state corporation commission is given full power, authority and jurisdiction to supervise and control the public utilities, . . . doing business in the state of Kansas, and is empowered to do all things necessary and convenient for the exercise of such power, authority and jurisdiction."

K.S.A. 1974 Supp. 66-104: "**Utilities subject to supervision.** The term 'public utility,' as used in this act, shall be construed to mean every corporation, company, . . . that now or hereafter may own, control, operate or manage, except for private use, any equipment, plant or generating machinery, or any part thereof, . . . for . . . the conveyance of oil and gas

through pipelines in or through any part of the state, except pipelines less than fifteen (15) miles in length and not operated in connection with or for the general commercial supply of gas or oil, . . . and all companies for the production, transmission, delivery or furnishing of heat, light, water or power: . . ."

**K.S.A. 66-141: "Liberal construction; incidental powers granted.** The provisions of this act and all grants of power, authority and jurisdiction herein made to the commissioners, shall be liberally construed, and all incidental powers necessary to carry into effect the provisions of this act are hereby expressly granted to and conferred upon the commissioners."

It is undisputed in this case that Cities Service is a corporation that owns, operates, and manages equipment or plants in the form of natural gas pipelines, compressor stations, and other attendant hardware. Furthermore, it is undisputed that Cities Service utilizes its facilities to transport and sell natural gas and that such natural gas is conveyed through its pipelines in and through the state of Kansas. K.S.A. 1974 Supp. 66-104 with its broad definition of a public utility recites two exemptions: (1) private use and (2) pipelines less than fifteen (15) miles in length and not operated in connection with or for the general commercial supply of gas or oil. Cities Service has not claimed the exemption of pipelines of less than fifteen (15) miles in length and not operated for the commercial supply of gas or oil. It obviously is not applicable under the facts now before us. Cities Service does argue that its activities fall within the exemption of private use. We have concluded that whether a business is a public utility must, of necessity, be determined by the character of its operations. In our judgment the claim of exemption under the private use exemption is ill-founded. Furthermore, there is nothing in the Kansas statutory definition of a public utility which requires it to hold itself out as serving the public generally.

For more than 70 years this court has taken the position that the production, transportation, distribution, and sale of natural gas for light, fuel, and power is a business of a public nature and subject to the regulation and control of the state. *(La Harpe v. Gas Co.,* 69 Kan. 97, 76 Pac. 448 [1904].) In *State v. Natural-gas Co.,* 71 Kan. 508, 80 Pac. 962, the court followed the decision of *La Harpe* and said: ". . . [C]ompanies organized for the purpose of piping and distributing gas for light, fuel, and power are given

authority to exercise the right of eminent domain. The privilege thus conferred stamps them as *quasi*-public corporations. . . ." Other decisions of this court have accepted this same general proposition that a natural gas pipeline company which sells gas in the state is subject to state regulation in the absence of federal preemption. *(The State, ex rel., v. Flannelly,* 96 Kan. 372, 152 Pac. 22; *The State, ex rel., v. Gas Co.,* 100 Kan. 593, 165 Pac. 1111; *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 169 Kan. 722, 222 P.2d 704, *reh. den.,* 170 Kan. 341, 225 P.2d 1054; *Cities Service Gas Co. v. State Corporation Commission,* 180 Kan. 454, 304 P.2d 528, reversed by the Supreme Court of the United States on another point in 355 U.S. 391, 2 L.Ed.2d 355, 78 S.Ct. 381, *reh. den.,* 355 U.S. 967, 2 L.Ed.2d 542, 78 S.Ct. 531.)

*Cities Service* relies in part on *State, ex rel., v. Sinclair Pipe Line Co.,* 180 Kan. 425, 304 P.2d 930. *Sinclair* was an action in mandamus in which the state on the relation of the attorney general and the state corporation commission sought to compel certain pipeline companies to ask approval of the commission before one company sells and the other buys a pipeline used for the transportation of crude oil. We held that the state statutes regulating common carriers do not apply to pipelines being used solely in interstate commerce. *Sinclair* involved the power of the state corporation commission to regulate the *transportation* of crude oil in interstate commerce. It was in no way concerned with state regulation of the *direct sale* of natural gas to Kansas customers which is the issue involved in this case. The regulation of the transportation of crude oil in interstate commerce was correctly held to be within the exclusive jurisdiction of the federal regulatory agency. *Sinclair* was distinguished in our most recent case on the subject, *Cities Service Gas Company v. State Corporation Commission,* 201 Kan. 223, 440 P.2d 660. In that case this court reversed the district court of Sedgwick county which had set aside the order of the state corporation commission as being unlawful. One basis for the district court's decision was that the jurisdiction of the commission under K.S.A. 66-101, *et seq.* exists only to those persons performing the functions specified in K.S.A. 66-104, *who have dedicated their property to public use and hold themselves out to serve the public generally.* One of the contentions made by the gas pipeline companies in

that case was that K.S.A. 66-104 did not authorize the commission to assume jurisdiction over them as public utilities. Rejecting this argument, the court in the opinion stated:

"We need not pursue the subject further, and again reiterate the historical doctrine prevailing in the decisions of this court and in our statute that the production, transportation, distribution and sale of natural gas for light, fuel and power is a business of a public nature, the control of which belongs to the state, and, by the enactment of the Public Utility Act, the regulation and supervision thereof was fully and completely vested in the commission." (p. 238.)

This court reversed the case on procedural grounds in that the commission had failed to make the necessary findings of fact and conclusions of law and directed the district court to remand the case to the commission for further proceedings. Apparently the commission did not thereafter act further in the case.

From an examination and analysis of these cases we have concluded that the law of Kansas is clear that the broad definition of a "public utility" as contained in K.S.A. 1974 Supp. 66-104 is sufficient to give to the Kansas state corporation commission jurisdiction to regulate the rates charged on direct sales of gas by Cities Service to its customers in the state. In reaching this conclusion we have followed the legislative mandate of K.S.A. 66-141 that the provisions of the public utilities act and all grants of power, authority, and jurisdiction therein made to the commissioners, shall be liberally construed. We have considered all of the contentions presented by Cities Service on this appeal and find them not to be persuasive when considered in the light of the definition of the term "public utility" as contained in 66-104. In our judgment the findings of fact and conclusions of law and the orders of the state corporation commission and of the district court on appeal are supported by substantial competent evidence and are legally correct. We have no quarrel with the interpretation by the commission and the district court as to the commission's power, authority, and jurisdiction under K.S.A. 66-101, *et seq.*

The judgment of the district court is affirmed.